Argued and submitted April 16, affirmed May 27, 1998

Eric CARLSON,
*Respondent,*

*v.*

BENTON COUNTY,
*Respondent,*

*and*

Robert MOSER
and Lucinda Moser,
*Petitioners.*

(LUBA No. 96-105; CA A101109)

961 P2d 248

David B. Smith argued the cause and filed the brief for petitioners.

Anne C. Davies argued the cause and filed the brief for respondent Eric Carlson.

No appearance for respondent Benton County.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners Moser seek review of LUBA's decision remanding Benton County's approval of their application for a "template dwelling" in a forest zone pursuant to ORS 215.750(1). We affirm.

ORS 215.750(1)(a) allows dwellings to be located on land in a forest zone if, along with other criteria that are not at issue now, "the lot or parcel is predominantly composed of soils that are * * * capable of producing" only "0 to 49 cubic feet per acre per year of wood fiber." *See also* OAR 660-06-027. The Land Conservation and Development Commission's (LCDC) rule, codified as OAR 660-06-005(2) defines "cubic foot per acre" for purposes of the statute. It states:

> " 'Cubic Foot Per Acre' means the average annual increase in cubic foot volume of wood fiber per acre for fully stocked stands at the culmination of mean annual increment as reported by the [Natural Resource Conservation Service (NRCS)]. Where [NRCS] data are not available or are shown to be inaccurate, an alternative method for determining productivity may be used. An alternative method must provide equivalent data and be approved by the Department of Forestry."

LUBA's opinion explains:

> "The [NRCS] soil study for the county shows that the subject property is composed of 70 percent Bellpine soils, 20 percent Witham soils, 8 percent Waldo soils, and 2 percent Dupee soils. The Bellpine soils have an NRCS productivity rating of 155 cubic feet per acre per year (cf/ac/yr) of wood fiber. The NRCS does not rate the productivity of the other soils. The absence of a NRCS productivity rating in this context means that the soil is 'typically used for agriculture' and has been evaluated only for crop production; a nonrating does not determine whether the soil is productive for growing wood fiber. The Oregon Forestry Department (OFD) rates the productivity of Witham soils in the county at approximately 80 cf/ac/yr of wood fiber, and Dupee soils at approximately 70 cf/ac/yr of wood fiber.

> "In 1994, [petitioners] applied to the county for a farm dwelling permit in conjunction with a proposal to expand the existing orchard to 500 trees. The county denied the

application because it did not meet the applicable farm dwelling criteria. In that decision, the county determined that '90 percent of the subject property was estimated to contain soils which have productivity ratings in excess of 80 cubic feet per acre per year' of wood fiber." (Footnote omitted.)

Petitioners filed their present application with the county in 1995. In this application, they submitted their own soil study, which determined that 51.2 percent of the soils on their property had a production capability of less than 50 cubic feet of wood fiber per acre per year. The county treated petitioners' study as an "alternative method for determining productivity" that could be considered under OAR 660-06-005(2).[1] Petitioners' study, however, focused only on the capacity of some of the soils to produce Douglas fir, to the exclusion of other commercial tree species.[2] The county found that approach to be acceptable, based on its interpretation that, as applied here, the "ambiguous term 'wood fiber' " in ORS 215.750(1) and OAR 660-06-005(2) means only Douglas fir. The county's rationale for that conclusion, as explained in its order, was that the LCDC "rule relies, in the first instance, on NRCS data. The only numerical data developed by the NRCS, as an examination of the Soil Survey for Benton and Lane Counties reveals, reports the productivity of Douglas fir." The county then concluded that the "property is [predominantly] composed of soils capable of producing 0 to 49 cf/ac/yr of wood fiber, specifically Douglas fir," and approved the dwelling application.

Respondent Carlson appealed to LUBA, contending, *inter alia,* that the county erred in its interpretation of the term "wood fiber" as used in the statute and LCDC's regulations. Respondent argues that the term "means any commercial tree species, not just Douglas fir." LUBA agreed with respondent. It stated that the "term 'wood fiber' by itself

---

[1] Neither the reasoning by which the county concluded that petitioners' study could be so treated, nor the very different reasoning that led LUBA to its conclusion that the county could look beyond the NRCS data, is presented as an issue to us.

[2] It is important to emphasize at this time that no contention is made that the area in question contains or is capable of producing only Douglas fir. The issue is whether, notwithstanding the actual or potential presence of other species, only Douglas fir needs to be considered under ORS 215.750 and LCDC's rules.

denotes a wide range of tree species," and that "the text and context of the pertinent statute do not support the county's interpretation." LUBA also determined that the legislative history of ORS 215.750 supported its conclusion. LUBA held that the "county err[ed] in interpreting 'wood fiber' to exclude other commercial tree species." Based on that error and others, LUBA remanded the decision to the county.

Petitioners make three assignments of error to us, the first of which challenges LUBA's conclusion that the term "wood fiber" in ORS 215.750(1)(a) and OAR 660-06-005(2) includes wood from commercial tree species generally and, at least as applied in Benton County, contemplates species other than or in addition to Douglas fir.

Petitioners point out, initially, that the term "wood fiber" appears in only two statutes and two LCDC administrative rules. One of the statutes, ORS 215.750, and both of the rules are provisions that apply directly to template dwellings in forest zones. The other statute, ORS 215.284(4), regulates "nonfarm dwellings" in agricultural zones and makes their permissibility contingent, *inter alia*, on the lot or parcel being comprised "of at least 95 percent soils not capable of producing 50 cubic feet per acre per year of wood fiber." Petitioners note further that "wood fiber" is not expressly defined in or for purposes of any of the four provisions. Petitioners next assert that various other statutes and rules, *e.g.*, ORS 215.720 (relating to forest dwellings that are permissible under different circumstances), provisions of the Forest Practices Act in ORS chapter 527, and statutory and regulatory provisions relating to the taxation of forest land, *do* use terms such as "commercial tree species" and others that petitioners regard as analogous for purposes of their argument.

Petitioners reason from the foregoing that, under the maxim *"expressio unius est exclusio alterius,"* the fact that the legislature did not modify "wood fiber" in ORS 215.750(1)(a) with the expression "commercial tree species," or expressions of similar or related import that appear in the other statutes, indicates that it did not intend that "wood fiber" be understood to encompass wood from all commercial species. Therefore, petitioners contend that the statute can relate to a single particular species—in this case, Douglas fir.

Respondent answers that "[p]etitioners' argument * * * proves too much." According to respondent:

> "The legislature's choice not to modify 'wood fiber' does not support petitioners' argument that the definition of 'wood fiber' is more restrictive than those other terms. In fact, exactly the opposite is true. 'Wood fiber' does not include a restrictive modifier, such as 'commercial' or 'marketable.' The absence of such a modifier suggests that 'wood fiber' is more broad than the other terms."

We agree with that observation and with the corresponding one in LUBA's opinion that, textually, the unmodified term "wood fiber" "denotes a wide range of tree species." The problem with petitioners' analysis based on the language of ORS 215.750 and other statutes is that, although they may state a case for reading "wood fiber" as not being synonymous with "commercial tree species," they offer no reason why the term as used in the statute itself can be understood as applying *only* to Douglas fir or any other particular species. Before the maxim *expressio unius est exclusio alterius* can be instructive as to what a statute excludes, one must first identify what it includes. On its face, the term "wood fiber" would appear to comprehend trees of *all* kinds, and LUBA's error, if any, would appear to be in its suggestion that the term applies *only* to *commercial* species.[3]

Petitioners attempt to fill the gap that the statute leaves in their argument by looking to the regulation. They note that OAR 660-06-005(2) requires that, "[i]n determining the forest productivity of soils, one must use the reports of the NRCS, unless such reports are unavailable or inaccurate, when an alternative method approved by the Department of Forestry may be employed." Petitioners further observe that the NRCS soils survey for Benton County lists a number of

---

[3] We note that, in his argument to LUBA, respondent contended that the statute applied to all commercial species and not that species of noncommercial varieties were also included.

Respondent also argues to us that, if the statute meant what petitioners contend, the legislature would have modified the term "wood fiber" with the words "Douglas fir." However, we do not understand petitioners' point to be that narrow. Rather, as will become clear as we progress, their point is that the statute *can* apply to only one species and, under the facts of this case, the rule makes Douglas fir the only species that may be considered.

tree species "for woodland suitability purposes," but states that Douglas fir is "the only species for which complete production tables are available" and, therefore, petitioners' study rates "[p]otential soil productivity * * * only for Douglas fir." Petitioners conclude that, under OAR 660-06-005(2), only Douglas fir data can be considered in making the soil capability determination required by ORS 215.750(1)(a), "because that is the only data furnished by the NRCS."

We find petitioners' argument regarding the rule to be unconvincing. OAR 660-06-005(2) expressly allows alternative methods of determining soil productivity capacities to be used when NRCS data are not available. As petitioners read the rule, however, it would limit the county's consideration to data relating to Douglas fir simply because NCRS has made no other data available. That understanding is contrary to what the rule plainly says.[4]

In any event, OAR 660-06-005(2) does not purport to say what kind or kinds of trees must be considered in the production capability determination that ORS 215.750(1) requires. The rule simply defines the unit of measurement and prescribes the sources of the data to be used in making the determination. The statute itself describes the thing that is to be determined—whether the property is predominantly composed of soils with the specified capability for producing wood fiber.

"Wood fiber" is defined in *Websters' New Collegiate Dictionary,* 1339 (1980) as "any of various fibers located in or

---

[1] LUBA concluded that necessary data was lacking in both the NRCS study and petitioners' study because of some combination of (1) nonrated soils, (2) the incorrect attribution of a zero capability to nonrated soils, and/or (3) the limitation of productivity determinations in general and for nonrated soils in particular to Douglas fir production capacity. The deficiencies in the two studies were not identical. It is unnecessary, however, for us to differentiate more finely than we have in this opinion; the dispositive issue is whether LUBA was correct in holding that the county misinterpreted ORS 215.750(1) as allowing it to determine production capability solely by reference to Douglas fir. If the county was wrong in that regard, its evaluation of the studies and the evidence of soil capabilities was necessarily affected.

associated with xylem."[5] Curiously, the term "wood fiber" is not defined in *Webster's Third New International Dictionary* (1993), but "fiber" appears to be integral to its definition of "wood" as "the hard fibrous substance that makes up the greater part of the stems and branches of trees." *Id.* at 2630. To whatever extent "wood" and "wood fiber" differ in their meanings, both are equally generic; that is, both are components of *all* trees. The text of the statute is therefore contrary to petitioners' and the county's understanding that it can apply to only one particular tree species in an area where trees of other kinds are present or are capable of being produced.

Like the text, the context of the statute is also contrary to petitioners' interpretation. As discussed earlier, petitioners rely on ORS 215.720(1)(a), which makes one of the criteria for forest dwellings that can be permitted under *that* statute that the soils of the proposed location "not [be] capable of producing 5,000 cubic feet per year of commercial tree species[.]" Petitioners read that language as supporting their proposition that the unmodified term "wood fiber" in ORS 215.750 does not relate to commercial species other than Douglas fir, because ORS 215.720 refers to commercial species generally and ORS 215.750 does not. However, as we view that difference between ORS 215.720 and ORS 215.750, it leads to the opposite conclusion. The fact that ORS 215.720 describes a particular category of trees, while ORS 215.750 describes a product or component of all trees, indicates to us that ORS 215.750 is the more inclusive statute.[6] Hence, the context supports the interpretation that the unmodified term "wood fiber" in ORS 215.750 means what the text itself appears to mean, *i.e.*, wood fiber from trees of all kinds—not just commercial species and not just Douglas fir.

---

[5] "Xylem" means

"a complex tissue in the vascular system of higher plants that consists of vessels, tracheids, or both [usually] together with wood fibers and parenchyma cells, functions chiefly in conduction but also in support and storage, and typically constitutes the woody element (as of a plant stem)[.]" *Id.* at 1347.

[6] ORS 215.720 and ORS 215.750 were both enacted through Oregon Laws 1993, chapter 792.

ORS 215.720(2) defines "commercial tree species" as those "recognized under rules adopted under ORS 527.715 for commercial production."

For the foregoing reasons, we reject petitioners' argument in their first assignment that LUBA erred in holding that ORS 215.750, on its face and as applied to the circumstances of this case, relates to tree species in addition to Douglas fir that petitioners' property is capable of producing.[7] Petitioners make two additional assignments. Because those assignments pertain to matters that are unlikely to arise in their present form after the county applies the correct legal standard on remand, we do not reach them. Finally, respondent argues that LUBA failed to address or decide his contention that the county's decision was not supported by substantial evidence, and that we should remand the case to LUBA to do so. Respondent has neither cross-petitioned from nor cross-assigned error to LUBA's decision. Consequently, we do not reach that argument.

Affirmed.

---

[7] Because the statutory text and context are sufficient for its interpretation, we do not reach the parties' arguments regarding legislative history.