Argued and submitted August 10, 2004, reversed and remanded April 20, 2005

# IN DEFENSE OF ANIMALS,
an Oregon nonprofit corporation,
*Appellant,*

*v.*

## OREGON HEALTH SCIENCES UNIVERSITY,
*Respondent.*

0107-07401; A120714

112 P3d 336

David A. Bahr argued the cause and filed the briefs for appellant.

Jens Schmidt argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick P.C.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.*

BREWER, C. J.

---

* Schuman, J., *vice* Landau, P. J.

**BREWER, C. J.**

This is an action for declaratory and injunctive relief arising out of a request for public records under the Public Records Law, ORS 192.410 to 192.505. Plaintiff, a nonprofit, tax-exempt public interest corporation registered in the State of Oregon, sought to inspect various categories of records of the Oregon Regional Primate Research Center (ORPRC or the primate center), a unit of the Oregon Health and Science University (OHSU), a public corporation.[1] Plaintiff also sought a reduction or waiver of the fees that OHSU assessed for provision of the records. OHSU reduced the fees for some records but denied any reduction or waiver of fees for inspection of ORPRC's "daily logs" pertaining to the care of individual animals housed at the primate center.

Pursuant to ORS 192.460, plaintiff petitioned the Multnomah County District Attorney for review of the denial; the district attorney denied the petition. Plaintiff then brought this action. The trial court ultimately concluded that it lacked subject matter jurisdiction over the fee issue and that, even assuming that it had jurisdiction over that issue, OHSU had, on the evidence presented, "complied with the law." It therefore dismissed the action with prejudice. Plaintiff appeals, asserting four assignments of error. On *de novo* review, ORS 19.415(3) (2001); *Davis v. Walker*, 108 Or App 128, 130, 814 P2d 547 (1991), we reverse and remand.

## I. HISTORICAL AND PROCEDURAL BACKGROUND

We take the following undisputed facts from the record, deferring our description of certain evidence to our discussion of the assignments of error to which it relates. Plaintiff's stated mission is to secure and defend the rights,

---

[1] ORS 353.020 provides:

"Oregon Health and Science University is established as a public corporation and shall exercise and carry out all powers, rights and privileges that are expressly conferred upon it, are implied by law or are incident to such powers. The university shall be a governmental entity performing governmental functions and exercising governmental powers. The university shall be an independent public corporation with statewide purposes and missions and without territorial boundaries. The university shall be a governmental entity but shall not be considered a unit of local or municipal government or a state agency for purposes of state statutes or constitutional provisions."

ORS 353.020 and related provisions were enacted in 1995. Or Laws 1995, ch 162.

welfare, and habitats of animals. On August 13, 1998, plaintiff sent a letter to ORPRC, noting that the primate center recently had merged with OHSU and requesting access under the public records statutes to specified categories of records. As noted, the requested records included what plaintiff characterized as "daily logs" pertaining to the care of individual animals from August 1995 forward. Plaintiff noted that it was prepared to pay the reasonable costs of duplication of the materials. In October 1998, plaintiff clarified that, by "daily logs," it meant "the daily records pertaining to the health and care of primates" such as, for example, records relating to "psychological enrichment protocols" and to the treatment of "non-induced" illnesses. Later that month, OHSU responded that records relevant to plaintiff's request for daily logs totaled approximately 75,000 pages and that the fee for producing those records would be $12,585.40, "including labor, page, and postal charges."

In November 1998, plaintiff paid the fees assessed for various other categories of records but "decline[d]" to pay the fee assessed for the daily logs. At that time and again in December 1998, plaintiff requested access to the documents in their electronic form for direct inspection. In February 1999, OHSU informed plaintiff that, after making its estimate of the costs of providing the daily logs, it had learned that the logs contained "proprietary information" that it would have to redact and that it was in the process of assessing the cost of such redaction.

In March 1999, plaintiff requested an explanation of what it characterized as OHSU's "exorbitant" fees and requested a complete or partial waiver of the fees. In support of that request, plaintiff explained that it is a public interest organization staffed by veterinarians and other professionals and that its purpose is "ending the institutionalized exploitation and abuse of animals" by preparing and disseminating relevant information in newsletters, on a website, in public workshops and panels, and to the media. Plaintiff asserted that the public records law "favor[s]" fee waivers for public interest groups "who act in this watchdog capacity." As pertinent here, in May 1999, OHSU informed plaintiff that it was not yet prepared to respond to plaintiff's request to inspect the daily logs due to the proprietary information that

they contained. On November 5, 1999, plaintiff sent a letter to OHSU in which it reviewed the parties' correspondence on the issue of release or inspection of the daily logs and noted that OHSU had neither granted nor denied plaintiff's request to view the logs on site. Plaintiff stated that it was asking to review only "primate care logs" and that such records "should have nothing to do with experimental data or protocols of a proprietary nature." OHSU apparently did not respond further to plaintiff's requests to obtain or inspect the daily logs.

In June 2000, plaintiff petitioned the Multnomah County District Attorney, challenging OHSU's calculation of its fees and seeking an order requiring OHSU to grant a fee waiver. *See* ORS 192.450(1); ORS 192.460. In support of its petition, plaintiff presented information regarding its dissemination to the public of information pertaining to matters of public interest (specifically, matters pertaining to animal welfare) and asserted that it therefore had a "demonstrated history of substantiated interest and direct involvement" in such matters.

In July, the district attorney issued a written order denying plaintiff's petition as to the fees assessed for various categories of records. The order did not, however, address or resolve the issue of plaintiff's requested inspection of the daily logs.

Plaintiff initiated this action in the circuit court, seeking a determination whether OHSU's fee assessments were reasonable. *See* ORS 192.480 (providing that person denied right to inspect or receive a copy of a public record may institute proceeding in the circuit court for injunctive or declaratory relief). Based on the failure of the district attorney to decide any issue pertaining to the daily logs, the parties later agreed to postpone the civil action. In October 2001, plaintiff again petitioned the district attorney, seeking review of OHSU's alleged refusal to allow on-site inspection of the daily logs, that is, electronic viewing of those records without the necessity of copying them. Plaintiff noted that OHSU had never asserted that any particular statutory exemption from disclosure applied to the logs and requested that the district attorney determine whether OHSU lawfully

could condition on-site inspection of the records on a payment of $12,585.40.

The parties then engaged in settlement negotiations. In December 2001, while negotiations were proceeding, OHSU provided plaintiff with a six-page "sample screen print" from its 60-page electronic record pertaining to one primate in its facility. In a cover letter accompanying the sample, OHSU noted that it had redacted company and veterinarian names and the names of experimental medications pursuant to, variously, the statutory exemptions for trade secrets, ORS 192.501(2),[2] personal privacy, ORS 192.502(2),[3] confidential submissions, ORS 192.502(4),[4] and OHSU sensitive business records, ORS 192.502(20).[5] Settlement negotiations ultimately were unsuccessful.

In May 2002, the parties reactivated the matter before the district attorney. Shortly thereafter, OHSU notified plaintiff that the fee for inspecting the redacted daily logs would be approximately $151,250. OHSU provided a

---

[2] ORS 192.501(2) provides that, unless the public interest requires disclosure in the particular instance, the following records are exempt from disclosure:

"Trade secrets. 'Trade secrets,' as used in this section, may include, but are not limited to, any formula, plan, pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information which is not patented, which is known only to certain individuals within an organization and which is used in a business it conducts, having actual or potential commercial value, and which gives its user an opportunity to obtain a business advantage over competitors who do not know or use it[.]"

[3] ORS 192.502(2) provides an exemption for the following category of information:

"Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, if public disclosure would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy."

[4] ORS 192.502(4) unconditionally exempts from disclosure

"[i]nformation submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure."

[5] ORS 192.502(20) unconditionally exempts from disclosure "[s]ensitive business records or financial or commercial information of the Oregon Health and Science University that is not customarily provided to business competitors."

similar estimate to the district attorney in its written response to plaintiff's petition. In addition, OHSU argued to the district attorney that, even assuming that release of the records sought by plaintiff was in the public interest, OHSU properly could deny plaintiff's request for a fee waiver because plaintiff had not demonstrated that it was unable to pay the assessed fees and because responding to plaintiff's records request—including redacting exempt material—would cost OHSU "tens of thousands of dollars" and would interfere with the ordinary business of the primate center. In turn, plaintiff reiterated that it was seeking to review the records on site and asserted that OHSU had failed properly to raise its claimed exemptions from disclosure. In June 2002, the district attorney again denied plaintiff's petition.[6]

Plaintiff then reactivated this action in the circuit court. In its amended complaint, plaintiff alleged that the records that it had requested were public records that were not exempt from disclosure and that the fees that OHSU had assessed for inspection of the records were not reasonably calculated to reimburse it for its actual costs, in violation of ORS 192.440(3). Plaintiff also alleged that it had shown that it was entitled to a substantial reduction or waiver of the fees under ORS 192.440(4), which provides for reduction or waiver when it is "in the public interest because making the record[s] available primarily benefits the general public." Plaintiff sought an order directing OHSU to waive all fees for the requested records and awarding attorney fees and costs under ORS 192.490(3), along with any other relief determined by the court to be just and equitable. In its answer, OHSU asserted, in part, that portions of the records sought by plaintiff were exempt from disclosure and that plaintiff

---

[6] Noting that OHSU had detailed the bases for its assessed costs for printing the relevant 75,000 pages of daily logs—that is, the basis for the original $12,585.40 fee—the district attorney concluded that those estimated printing costs were not unreasonable. He also concluded that on-site inspection of the records "does not appear viable unless and until the exemption issues related to OHSU's efforts to protect the identities of the veterinarians, companies and medication are resolved in a separate petition"; in a footnote, he noted that the costs for the redaction of that information would add approximately $151,250 to OHSU's costs. The district attorney reasoned that, considering the large number of documents requested, OHSU had not abused its discretion in declining to expend its "limited resources" to make the documents available.

had failed to exhaust its administrative remedies regarding those exemptions.

Both parties moved for summary judgment on the issue whether OHSU's assessed fees were "reasonably calculated to reimburse it for its actual costs" of making the daily logs available, as required under ORS 192.440(3). The trial court denied the motions. The case then proceeded to trial, where the parties presented documentary evidence including the correspondence and other written materials described above, witness testimony as described below, and argument. *See* ORS 192.490 (circuit court shall determine the matter *de novo*).

The trial court issued a letter opinion in which, as previously noted, it first concluded that, notwithstanding *Davis*—in which this court decided the reasonableness of an agency's assessed fees for producing public records—it lacked subject matter jurisdiction over the fee issue. The trial court also ruled that, assuming that it had jurisdiction over that issue, OHSU had "complied with the law and with the requirements of *Davis*." The court therefore entered judgment in favor of OHSU and dismissed the case with prejudice.

## II. PLAINTIFF'S APPEAL

On appeal, plaintiff raises four assignments of error. It first argues that the trial court erred in concluding that it lacked jurisdiction over fee issues and, alternatively, in determining that OHSU's assessed fees were reasonable. It next argues that the trial court erred in concluding that OHSU properly denied its request for a fee waiver or reduction. In its third assignment of error, plaintiff argues that, by failing to identify assertedly applicable exemptions from disclosure in the proceeding before the district attorney, OHSU waived its right to assert those exemptions before the trial court. Finally, plaintiff argues that OHSU failed to meet its burden to show that the exemptions applied and that the trial court therefore erred in determining otherwise.

Our resolution of plaintiff's third and fourth assignments of error, which raise procedural and substantive challenges to OHSU's assertion of various exemptions from disclosure, may bear on our resolution of plaintiff's first

assignment of error, pertaining to the reasonableness of OHSU's assessed fees (including, as a threshold matter, the issue of the trial court's and this court's jurisdiction to consider that issue[7]), as well as on our resolution of its second assignment of error, pertaining the OHSU's denial of plaintiff's requested fee waiver. Accordingly, we first consider plaintiff's challenges relating to OHSU's asserted exemptions. Before doing so, we briefly review the basic framework within which we consider plaintiff's arguments.

In *Kluge v. Oregon State Bar*, 172 Or App 452, 455, 19 P3d 938 (2001), this court explained that

> "Oregon has a 'strong and enduring policy that public records and governmental activities be open to the public.' *Jordan v. MVD*, 308 Or 433, 438, 781 P2d 1203 (1989). The guiding principle in Oregon is to protect the public's right to inspect public records. ORS 192.420 ('Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided * * *.'); *City of Portland v. Anderson*, 163 Or App 550, 553, 988 P2d 402 (1999). Disclosure is the rule and exemptions from disclosure are to be narrowly construed. *Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 184, 925 P2d 591 (1996), [*modified and adhered to as modified on recons*, 152 Or App 135 (1998),] *aff'd on other grounds*, 329 Or 393, 987 P2d 480 (1999). When a public body withholds public records from disclosure, that body carries the burden of sustaining that action upon judicial review. ORS 192.490(1)."

*See also Oregonian Publishing*, 329 Or at 398-99 (noting Oregon's "long-standing policy" in favor of access to public records); *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 39, 791 P2d 854 (1990) ("A public body may not exempt itself from its responsibilities under the Inspection of Public Records law by adopting a policy that seeks to deprive citizens of their right under the law to inspect public records. Disclosure is the norm; exclusion is the exception that must be justified by the public body."). Again, the public body bears the burden of justifying exemptions from disclosure. ORS 192.490(1); *Gray v. Salem-Keizer School District*, 139 Or App 556, 563, 912 P2d 938, *rev den*, 323 Or 265 (1996).

---

[7] We use the term "jurisdiction" here to refer to the courts' statutory authority to consider the described issue.

■ As noted, on appeal from a judgment of the circuit court granting or denying disclosure of a public record, we review *de novo* the evidence underlying the judgment; we determine legal issues as a matter of law. *See, e.g., Oregonian Publishing*, 144 Or App at 184-85 (reviewing the record *de novo* and determining as a matter of law whether the requestor had timely filed its petition before the district attorney and whether the records at issue were statutorily exempt from disclosure).

A. *Exemptions from Disclosure*

1. *Waiver*

■ In its third assignment of error, plaintiff contends that, as a procedural matter, OHSU waived its right to assert any exemptions from disclosure. Specifically, plaintiff contends that a public body seeking to exempt records from disclosure under one or more of the exemptions set out in ORS 192.501 and ORS 192.502 has the burden to demonstrate that the exemptions apply *and* that the public body must do so during the proceeding before the Attorney General or district attorney. It argues that, here, OHSU repeatedly failed to identify the applicable exemptions in any meaningful manner in the proceeding before the district attorney, despite OHSU's, plaintiff's, and the district attorney's repeated references to the possibility that one or more exemptions might apply. Plaintiff relies in part on ORS 192.470(2), providing that, after a requestor files a petition with the Attorney General or the district attorney and after the latter notifies the public body involved, the public body "shall thereupon transmit the public record" of which the requestor is seeking disclosure "together with a statement of its reasons for believing that the public record should not be disclosed."

Plaintiff also points to the practice under the federal Freedom of Information Act (FOIA), 5 USC § 552—which the Oregon legislature reviewed before enacting the Public Records Law, *see Marks v. McKenzie High School Fact-Finding Team*, 319 Or 451, 458, 878 P2d 417 (1994)—whereby a public body asserting exemptions from disclosure submits to the adjudicatory tribunal an itemized index of records and the applicable exemptions, along with detailed explanations of why the exemptions apply. Finally, plaintiff

argues that, like 5 USC section 552(a)(4)(A)(vii), which limits the federal courts' *de novo* review of FOIA fee waiver issues to the record made before the administrative agency, ORS 19.415(3) (2001) limits the trial court's and this court's *de novo* review to the record before the Attorney General or district attorney. *See* ORS 19.415(3) (2001) (on appeal from a judgment in a suit in equity, the Court of Appeals shall try the cause anew upon the record). OHSU responds that it asserted the claimed exemptions in a timely manner by specifically identifying them in its December 2001 letter to plaintiff and in the declaratory judgment action.

■　We conclude that OHSU did not fail to raise its asserted exemptions in a timely manner. ORS 192.490 sets out the circuit court's authority in an action for declaratory or injunctive relief; subsection (1) provides, in part, that the court "shall determine the matter de novo and the burden is on the public body to sustain its action." Nothing in that statute or any other provision in the Public Records Law limits the circuit court to consideration of the record developed by the parties before the Attorney General or the district attorney. Nor does ORS 19.415(3) (2001) limit this court in the manner asserted by plaintiff; rather, to the extent that this court tries the cause "anew upon the record," it is limited to the record of the trial court proceeding. Accordingly, although ORS 192.470(2) requires a public body to submit a requested record to the Attorney General or district attorney "together with a statement of its reasons for believing that the public record should not be disclosed," that requirement is not a necessary prerequisite to asserting such exemptions in the action for declaratory or injunctive relief. *Cf. Turner v. Reed*, 22 Or App 177, 187, 538 P2d 373 (1975) (describing pleading requirements in civil proceeding under ORS 192.450(2) to enforce then-newly enacted public records statutes, including necessity of pleading applicable exemptions). Plaintiff's procedural challenge fails.

## 2. *Applicability*

We turn to plaintiff's fourth assignment of error, in which it asserts that OHSU failed to meet its burden to show that the asserted exemptions apply. According to plaintiff,

OHSU's "vague" assertion that "some" of the requested material was exempt from disclosure was insufficient as a matter of law. Plaintiff also contends that, as a matter of law, the exemptions for trade secrets, ORS 192.501(2), confidential submissions, ORS 192.502(4), and sensitive business records of OHSU, ORS 192.502(20), do not apply to mere company names or the names of experimental medications. It also argues that persons' names—as pertinent here, the names of veterinarians and other staff employed in an institution funded in part by public money—are not ordinarily subject to the exemption for information of a personal nature, ORS 192.502(2), and should not be exempt here because the public interest in disclosure—the ability to determine whether any of the veterinarians employed at OHSU has previously been involved in animal abuse in other research facilities—outweighs the minimal intrusion on the veterinarians' privacy.

OHSU initially responds that there is no trial court ruling regarding exemptions for this court to review. It also argues that, to the extent that the trial court implicitly declined to address the exemption issue, the trial court did not err because the district attorney did not address it and the issue therefore was not ripe for review. Finally, OHSU argues that, to the extent that the trial court implicitly ruled that the exemptions applied, it was correct. In that regard, OHSU argues that some of the experimental work undertaken at ORPRC is undertaken pursuant to contracts with drug companies that include nondisclosure or confidentiality provisions and that, by reason of those provisions, information covered by them—including the names of the relevant companies and experimental drugs—constitutes either trade secrets for the purpose of ORS 192.501(2), confidential submissions within the meaning of ORS 192.502(4), or OHSU sensitive business records for the purpose of ORS 192.502(20). It also contends that the names of OHSU staff members who work with the animals at ORPRC are exempt from disclosure under the personal privacy exemption, ORS 192.502(2), and under the newly created exemption for information about persons engaged in animal research at OHSU, ORS 192.501(31).[8]

---

[8] ORS 192.501(31) provides that the following records are exempt from disclosure unless the public interest requires disclosure in the particular instance:

In reply, plaintiff reiterates that OHSU's claims of exemption were insufficiently specific and that, to the extent that the information claimed to be exempt consisted entirely of names—company names, drug names, and researchers' names—none of the exemptions applies.

■ As an initial matter, we treat the judgment in this case as having determined the applicability of the claimed exemptions. Again, the trial court ruled that, assuming that it had jurisdiction, OHSU "ha[d] complied with the law." Thus, it implicitly concluded that the records sought by plaintiff were subject to the claimed exemptions.

■ We turn to the correctness of that ruling. We review the applicability of exemptions from disclosure under the Public Records Law as a question of law. Where an exemption has not previously been interpreted and applied by the appellate courts of this state, we determine its meaning according to the statutory construction methodology set out in *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993), *see Oregonian Publishing,* 329 Or at 399-400; *Marks,* 319 Or at 456-58, keeping in mind the policy in favor of disclosure. If any of the claimed exemptions applies to a particular record or portion of a record, we need not consider the applicability of other exemptions to that record or portion of a record. Once again, the public body ordinarily has the burden of sustaining an asserted exemption from disclosure. ORS 192.450(1).

   a. *Names of drug companies and experimental drugs*

■ OHSU argues in part that the names of the drug companies for which it conducted research and the names of

---

"The name, home address, professional address or location of a person that is engaged in, or that provides goods or services for, medical research at Oregon Health and Science University that is conducted using animals other than rodents."

ORS 192.501(31) was enacted by the 2003 legislature, Or Laws 2003, ch 807, § 2, and went into effect on September 24, 2003. It applies to "information provided before, on or after the effective date" of the act. Or Laws 2003, ch 807, § 9(2). As of January 2, 2006, it is repealed. Or Laws 2003, ch 807, § 12. Plaintiff does not argue that the exemption does not apply by reason of its post-trial enactment and does not request that we remand for further proceedings relating to the exemption.

the experimental drugs involved were exempt from disclosure under ORS 192.502(20). As previously noted, that provision unconditionally exempts from disclosure "[s]ensitive business records or financial or commercial information of the Oregon Health and Science University that is not customarily provided to business competitors." The Oregon appellate courts have not previously had occasion to interpret or apply the OHSU sensitive business records exemption. We understand the adjective "sensitive" to mean "intended to be treated with a high degree of discretion." *Webster's Third New Int'l Dictionary* 2068 (unabridged ed 2002). Also, to the extent that the relevant medical, scientific, and other types of research conducted at ORPRC constitute a business activity of OHSU, the resulting records and information are business records. *See id.* at 302, 456 (defining "business" in part as "a usu[ally] commercial or mercantile activity"; defining "commercial" in part as "of, in or relating to commerce"; and defining "commerce" in part as "dealings of any kind"). As to the meaning of the phrase "not customarily provided to business competitors," the phrase plausibly might refer to OHSU's own business competitors, that is, other health care and research facilities; to the competitors of OHSU's business partners, such as the competitors of drug companies who have contracted with ORPRC to conduct research; or to both types of competitors. Because the phrase is not qualified in any way, we conclude that it applies to competitors of either OHSU or its business partners.

■    Thus, by its terms, we understand the unconditional exemption set out in ORS 192.502(20) to apply to records or information pertaining to activities of OHSU that are commercial in nature—including medical and scientific research activities if conducted for commercial purposes or in a commercial manner—where the records or information ordinarily would not be provided to either OHSU's or its business partners' competitors.[9]

---

[9] We note that the legislative history of ORS 192.502(20) provides no assistance in determining the provision's meaning. It was enacted in 1995 as part of legislation that converted OHSU to a public corporation. Or Laws 1995, ch 162, § 62a. Although a witness representing the Oregon Newspaper Publishers Association testified before the Senate Education Committee that the language of the exemption was "overly broad and undefined" and that currently existing exemptions, such as that for trade secrets, were adequate to protect OHSU's records, we have

We turn to relevant evidence in this case. Dr. Hall, a veterinarian and OHSU's director of comparative medicine, testified that ORPRC was established around 1963 and that the purpose of the research being conducted at the facility was "primarily * * * to improve the health of man."[10] Dr. Ogden, a veterinarian, the head of a division of the primate center and the former head of the department of comparative medicine, testified that OHSU contracted with outside companies, including pharmaceutical companies, to test their products and that those companies "would not consider our site a safe place to do their research" if their company names were disclosed to their competitors because the use of a particular research center implies that a company is utilizing the particular expertise of that center and therefore "gives information to their competitors." Ogden also testified that OHSU had contracted to test "articles"—that is, experimental drugs—for those companies and that "[t]he test agent is proprietary, and we've agreed that we would not release that information. * * * [E]ven the fact that they are working in non-human primate models at our institution would be useful information to their competitors." Plaintiff presented no contrary evidence.

We conclude that OHSU met its burden to show that company names and drug names were unconditionally exempt from disclosure under ORS 192.502(20). Specifically, the described testimony demonstrates that, notwithstanding ORPRC's "primar[y]" purpose of improving human health, ORPRC's research activities constituted business activities; that the names of companies with which it contracted to conduct research and the names of the drugs that it tested in the course of that research therefore constituted "business

---

not identified any remarks by legislators addressing those concerns or clarifying the provision's intended meaning. Tape Recording, Senate Education Committee, SB 2, Feb 28, 1995, Tape 43, Side B (statement of Gail Ryder). Members of the Public Corporation Advisory Committee testified regarding the financial advantages of converting OHSU to a public corporation and the concomitant need to eliminate "competitive obstacles" such as those created by the Public Records and Public Meetings Laws. Testimony, Senate Education Committee, SB 2, Feb 28, 1995, Ex E (statements of Neil Goldschmidt and Fred Buckman). Those witnesses also failed to clarify the precise scope of the new exemption for sensitive business records.

[10] Asked for an example of a "specific health care issue" that had been or was being researched at ORPRC, Hall mentioned a study pertaining to the "mechanisms" of premature birth and other aspects of reproductive biology.

records" within the meaning of ORS 192.502(20); and that those records were "sensitive" records that ordinarily would not be provided to the companies' competitors. We therefore need not consider whether those categories of information were conditionally exempt as trade secrets, ORS 192.501(2), or were exempt as information submitted to OHSU in confidence, ORS 192.502(4).

b. *Staff names*

We turn to the remaining category of information sought to be withheld from disclosure, ORPRC staff names.[11] As previously stated, OHSU asserts that the names are exempt under ORS 192.501(31), providing a conditional exemption for the names, home addresses, and professional addresses or locations of persons engaging in medical research at OHSU that is conducted using animals other than rodents; and ORS 192.502(2), providing an exemption for information of a personal nature. Plaintiff argues that the public interest in disclosure defeats both claimed exemptions.

We begin and end with ORS 192.501(31). The parties do not dispute that the names OHSU seeks to withhold from disclosure fall into the category established in ORS 192.501(31). Accordingly, we consider only whether "the public interest requires disclosure in the particular instance." As with other exemptions that are conditional by reason of inclusion in ORS 192.501, we balance the public's interest in disclosure against OHSU's interest in nondisclosure; the presumption remains, however, in favor of disclosure. *See Springfield School Dist. #19 v. Guard Publishing Co.*, 156 Or App 176, 179, 967 P2d 510 (1998) (conditional exemptions require balancing of confidentiality interest versus public interest in disclosure); *Turner*, 22 Or App at 187 (same, "with the presumption always being in favor of disclosure"). The public's interest in disclosure encompasses the public's interest in information about the manner in which public business is conducted, *see Guard Publishing Co. v. Lane County School Dist.*, 96 Or App 463, 468-69, 774 P2d 494 (1989), *rev'd*

---

[11] Ogden testified at trial that, in addition to veterinarians, staff members whose names were at issue included "technicians who do the treatments of the animals" and persons "involved in the psychological well-being program."

*on other grounds*, 310 Or 32, 791 P2d 854 (1990), and the right of the public to "monitor what * * * appointed officials are doing on the job," *Jensen v. Schiffman*, 24 Or App 11, 17, 544 P2d 1048 (1976). *See also City of Portland*, 163 Or App at 554 (public had interest in confirming integrity of public official); *Oregonian Publishing Co.*, 144 Or App at 187 (alleged misuse and theft of public property by public employees was a matter of "legitimate" and "significant" public interest). Evidence of the purpose for which the requestor is seeking the records may be relevant to the question whether the public interest requires disclosure. *Jordan v. MVD*, 93 Or App 651, 655 n 2, 763 P2d 420 (1988), *aff'd*, 308 Or 433, 781 P2d 1203 (1989).

■    We again turn to the evidence in this case. Plaintiff's northwest outreach coordinator, Rossell, testified at trial that one of plaintiff's purposes is to ensure that primate research facilities are complying with the federal Animal Welfare Act[12] and that plaintiff's staff included a primate veterinarian who was "well versed in the humane care of primates," as well as other persons with expertise in "disseminating information from research laboratories." Rossell testified that plaintiff's staff planned to use the requested records to produce a report on OHSU's use of its research animals for dissemination to, and education of, the public, OHSU's own Ethics Task Force, and a legislatively established committee having oversight over animal research at OHSU. Rossell testified that the oversight committee itself had a "goal" of "ensuring that the animals at OHSU are being treated in a humane way" and that plaintiff's staff had been attending the committee's meetings and interacting with the committee.

    Additional evidence in the record pertaining to the public interest in disclosure of the records—including evidence of plaintiff's purpose in requesting the records[13]—included an October 6, 1998, letter to OHSU from Dr. Speede,

---

[12] The Animal Welfare Act, 7 USC § 2131, and regulations promulgated thereunder, 9 CFR §§ 1.1 - 3.142, are intended to ensure that animals used in research facilities are provided "humane care and treatment." *See, e.g., Doris Day Animal League v. Veneman*, 315 F3d 297, 297-98, *cert den*, 540 US 822 (DC Cir 2003).

[13] Some of the described evidence was prepared by plaintiff in the context of its request for a fee waiver.

a veterinarian and, at that time, plaintiff's northwest director, in which Speede stated that she would "like to see the records by which you are assured that animal care protocols and medical regimens are followed by your staff"; a March 25, 1999, letter to OHSU from plaintiff's outreach coordinator, Miller, in which she asserted that plaintiff had "proven capabilities" of disseminating information relating to the protection of animals to the public "in a meaningful way"; a November 1999 letter from Speede to OHSU indicating plaintiff's continuing concern about "primate suffering in research laboratories" and its intent to continue lobbying in Congress for "stronger animal protection laws"; and a June 2000 letter from plaintiff's outreach coordinator, Lown, to the district attorney indicating plaintiff's focus on "educating the public" about the purported inadequacy of current animal welfare laws, its plan to prepare a report for presentation to Congress and the public about the conditions of primates in the national primate research center system, and its previous history of media coverage pertaining to that issue.

OHSU did not present any evidence directly refuting plaintiff's evidence pertaining to the asserted public interest in disclosure; rather, its evidence pertained primarily to its own interest in nondisclosure. Hall testified that people had written down his license plate number as he drove into the ORPRC parking lot and that threatening notes had been left on the windshield of his car; although he knew of no "direct link" between plaintiff and those activities, he agreed that there was a "generalized concern" at the primate center about "harassment" and "threats to safety by various animal rights groups." The associate director of the primate center, Conn, testified that, while visiting a university campus in Florida, he was accused of "torturing" animals and was "harassed" by "threatening phone calls" and by people shouting and spitting at him; he identified the perpetrators as "animal rightists." On cross-examination, Conn testified that he did not know whether plaintiff or any member of its organization was involved in the described incidents, in criminal activities, or in activities that were not protected by the First Amendment. He testified, however, that he believed that there was a "relationship" between plaintiff and the organizations that had harassed him. He described an incident in

which an employee of plaintiff "apparently" wrote down license plate information at the primate center and asserted that plaintiff was associated in various ways with groups involved in animal rights petition drives and boycotts. Conn testified that he had recently requested that the state block access to his driver's license information.

Ogden testified that he felt "threatened by the rhetoric" of animal rights groups and had submitted to OHSU a written request, also admitted in evidence at trial, that OHSU not disclose his name or other identifying information to the public based on his concern about "harassing tactics" of "animal rights activists." OHSU's public safety director, Granger, testified that he believed that there had been a "very violent turn in the tactics used by animal rights groups" in recent years, including the "targeting of individual people," and that, based on those concerns, he had petitioned the Driver and Motor Vehicle Services Division to withhold the personal information of "select individuals." On cross-examination, both Ogden and Granger testified that they had no information that, as Granger put it, plaintiff was "encouraging people to take unlawful action."

Also as pertinent to the public interest in disclosure of staff members' names, Conn acknowledged that the names of ORPRC researchers are published on the center's website "because they are supported by federal dollars [and] are generally public record." Ogden testified that the names of researchers who have National Institutes of Health (NIH) grants are posted but that he was seeking to protect other employees such as veterinary technicians.

On balance, and even considering the presumption in favor of disclosure, we conclude that the public interest does not require disclosure of the names of ORPRC staff. Notwithstanding plaintiff's argument in this court regarding the possibility that ORPRC staff members have been involved in animal abuse in other facilities, the record in this case does not show that plaintiff's purpose of ensuring the proper treatment of the animals housed at ORPRC is dependent on receiving the names of specific employees. Conversely, although there was no evidence that plaintiff itself had

engaged in any of the conduct described by OHSU's witnesses, that evidence was sufficient to demonstrate a significant interest on the part of OHSU in nondisclosure of ORPRC staff members' names. *Cf. Jordan*, 308 Or at 444 (Gillette, J., concurring) (noting, in effect, that court properly should consider derivative consequences of disclosure of information). Because we conclude that, on this record, ORPRC staff names are exempt from disclosure under ORS 192.501(31), we need not consider whether they were exempt under ORS 192.502(2).

In sum, the trial court did not err in respect to OHSU's asserted exemptions from disclosure.

B. *Fees*

1. *Jurisdiction*

We return, then, to plaintiff's assignments of error relating to the reasonableness of OHSU's assessed fees and of its denial of plaintiff's request for a waiver or reduction of the fees. In its first assignment of error, plaintiff argues that the trial court erred in determining that it lacked jurisdiction to review the basis and amount of fees assessed by OHSU and in determining that those fees were reasonably calculated to reimburse OHSU for its actual costs in making the daily logs available, as provided in ORS 192.440(3). According to plaintiff, *Davis* is on point as to both of those issues and requires reversal.

OHSU responds that the circuit court has authority under ORS 192.450(2) to review the denial of a request to inspect a public record and has authority under ORS 192.440(5) to review the denial of a fee waiver but that, *Davis* notwithstanding, the court has no statutory authority to review the reasonableness of an assessed fee. It also argues that, in any event, its evidence at trial demonstrated that its actual and estimated fees were reasonably calculated to reimburse it for its actual costs. In that regard, OHSU contends that it never assessed plaintiff $151,000 for providing the daily logs and that the only amount at issue is $12,585.40. It also contends that, although *Davis* referred to the public body's failure to conduct a "study" to determine its actual costs of providing public records, a study is not

required in every case and that OHSU's alternative evidence was sufficient here.

Plaintiff replies that, by informing the district attorney that it would cost $151,000 to redact the daily logs, OHSU effectively assessed that amount. It also argues that, the text and context of the judicial review provisions of the Public Records Law, as well as *Davis*, demonstrate that the reasonableness of assessed fees is judicially reviewable. Specifically, plaintiff argues that, under ORS 192.490(1), the trial court has jurisdiction to enjoin a public body from "withholding records," without any limitation on the underlying basis for the withholding and that the court's review authority therefore extends to situations in which the amount of the fee, by its unreasonableness, "establishes a barrier" to access to the records. According to plaintiff, any other reading of the statute would "insert what is omitted" into the statute. *See* ORS 174.010. Plaintiff argues that the express reference in ORS 192.440(5) to judicial review of fee waiver denials does not controvert that analysis; it contends that express reference to fee waiver denials is "appropriate" because it necessitates a case-by-case analysis depending on what entity is requesting a public body's records, whereas the reasonableness of a particular public body's fees is not dependent on the identity of the requestor. Plaintiff also argues that ORS 192.450, relied on by OHSU in arguing that the trial court lacks review authority, pertains only to the "administrative" proceeding before the Attorney General or district attorney. As to the reasonableness of the fees in this case, plaintiff reiterates that OHSU has no consistent method of calculating costs equivalent to the kind of "study" approved in *Davis* and that its refusal to delegate tasks to appropriate staff results in unnecessarily high labor costs.

As discussed above, ORS 192.420 provides that any person has the right to inspect public records of public bodies unless some exemption from inspection applies. ORS 192.420(1). The custodian of a public record shall provide to a person who asks to inspect the record a reasonable opportunity to inspect or copy it; in addition, if so requested, the custodian shall provide the person with a copy of the record. ORS 192.430(1); ORS 192.440(1), (2).

Various provisions relate to a public body's authority to establish fees for the inspection or copying of public records. First, ORS 192.440(3) provides, in part, that a public body "may establish fees reasonably calculated to reimburse it for its actual cost in making such records available including costs for summarizing, compiling or tailoring such record, either in organization or media, to meet the person's request." Next, subsection (4) of ORS 192.440 provides that the public body "may furnish copies without charge or at a substantially reduced fee if the custodian determines that the waiver or reduction of fees is in the public interest because making the record available primarily benefits the general public." Under subsection (5),

> "[a] person who believes that there has been an unreasonable denial of a fee waiver or fee reduction may petition the Attorney General or the district attorney in the same manner as a person petitions when inspection of a public record is denied under ORS 192.410 to 192.505. The Attorney General, the district attorney and the court have the same authority in instances when a fee waiver or reduction is denied as it has when inspection of a public record is denied."

Next, ORS 192.450(1) provides, in part, that a person who is denied the right to inspect or receive a copy of a public record in the custody of a state agency may petition the Attorney General to review the public record and determine whether the record should be disclosed. ORS 192.470 sets out a form for such a petition; it indicates that the requestor may request access to the records for inspection or copies of the records. ORS 192.470(1). Under ORS 192.470(2), the public body must either transmit the records to the Attorney General or provide a statement of the "nature or substance" of the records, along with a statement of the public body's "reasons for believing that the public record should not be disclosed." The burden is on the agency to "sustain its action." ORS 192.490(1). Those same procedures are available in regard to records in the custody of a public body other than a state agency; in that circumstance, the district attorney carries out the functions of the Attorney General. ORS 192.460.

Further, if the Attorney General (or, as applicable, the district attorney) grants the petition in whole or in part

and orders the state agency (or other public body) to disclose the relevant portions of the record, or the Attorney General or district attorney denies the petition, or the public body withholds records notwithstanding an order to disclose them, the adversely affected entity—including the person seeking disclosure—may institute proceedings in the circuit court for injunctive or declaratory relief. ORS 192.450(2); ORS 192.460. The failure of the Attorney General or district attorney to issue an order on a petition "shall be treated as an order *denying the petition* for the purpose of determining whether a person may institute proceedings for injunctive or declaratory relief." ORS 192.465(1) (emphasis added).

Finally, as pertinent here, ORS 192.490(1) provides, in part:

"In any suit filed under ORS 192.450 [or] 192.460, * * * the court has jurisdiction to enjoin the public body from withholding records and to order the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the public body to sustain its action. The court, on its own motion, may view the documents in controversy in camera before reaching a decision."

Considered together, the quoted statutes expressly provide that the Attorney General or district attorney is authorized to review the denial of access to a public record and may review the denial of a fee waiver or reduction. In addition, the statutes expressly provide that a person may seek injunctive or declaratory relief in regard to the denial of the right to inspect or receive a copy of a public record, ORS 192.450(2); ORS 192.490(1), and the denial of a request for fee waiver or fee reduction, ORS 192.440(5). However, none of the quoted statutes expressly provides for that remedy in regard to the establishment of reasonable fees under ORS 192.440(3).

Nevertheless, we conclude that the trial court was authorized, in the context of an action for declaratory or injunctive relief, to consider that issue because it is integral to the issue of access, or denial of access, to public records for inspection or copying. In addition, as discussed below, it is relevant to the issue whether a public body has unreasonably

denied a fee waiver or fee reduction. Under ORS 28.010, a court has the power to "declare rights, status, and other legal relations." Thus, even assuming that the authority of the Attorney General and the district attorney does not extend to review of the reasonableness of a public body's fees, the authority of the circuit court is not so limited. Although ORS chapter 192 does not expressly provide for circuit court review of the reasonableness of a public body's fees, it was within the trial court's jurisdiction to decide that question. We held as much in *Davis*.[14] It follows that the trial court erred in concluding otherwise.

### 2. *Amount of fees*

We turn to whether the trial court's alternative ruling was correct, that is, whether, on *de novo* review, OHSU's assessed fees were *"reasonably* calculated to reimburse it for its actual costs." (Emphasis added.) We begin by noting that, in this court, plaintiff challenges as unreasonable both the $12,585.40 assessed by OHSU throughout most of the proceeding before the district attorney and the approximately $151,000 about which OHSU later informed both plaintiff and the district attorney. As noted above, in this court, OHSU asserts that $12,585.40 was the "only amount OHSU ever requested plaintiff to pay for" the daily logs and that it "did not demand" that plaintiff pay $151,000. However, two of OHSU's witnesses, Hall and Ogden, testified that the lesser amount did not take into account the costs of redacting the information that OHSU eventually sought to withhold from disclosure; that evidence suggests that OHSU did, for all practical purposes, assess the larger amount. In any event, based on the evidence discussed below, we are unable to conclude that either amount satisfied the requirements of ORS 192.440(3).

Hall testified that OHSU responded to public records requests on an "ad hoc" basis and that he had computed the costs associated with providing records relating to

---

[14] As OHSU notes, *Davis* preceded the Supreme Court's decision in *PGE*, 317 Or at 610-12. However, that fact is of no significance unless the interpretation in *Davis* cannot be reconciled with the statutory interpretation methodology established in *PGE*. *See, e.g., State v. Linder*, 177 Or App 715, 33 P3d 1023 (2001) (declining to extend reasoning of case that preceded *PGE* and was inconsistent with it).

one of the categories of records requested by plaintiff that is not at issue here, namely, primate necropsy and pathology reports, by multiplying the hours of staff time spent in identifying the records by the relevant hourly rate and then adding the cost of copying the records. Hall testified that the resulting amount was an "estimate" and that it did not take into account any possible redactions to the records. He also testified that it would be necessary for a "trained person" to review the documents for redaction purposes.

Ogden testified that he assisted in calculating the costs of various categories of records requested by plaintiff. Ogden testified that plaintiff's records request was "a learning process" for the primate center because it had not previously had a request of that scope and that, in making the original estimate of $12,585.40 for the costs of producing the daily logs at issue here, he multiplied the number of animals by the average number of pages per animal, then "applied the 15 cents per copy and the labor," as well as per-pound shipping costs. He also testified that the estimated labor time included time spent entering the individual animal's numbers and "overseeing" the copying, packaging, and shipping processes; it did not include redaction of the records. Ogden also testified that some of the "personnel" costs of producing the records were calculated at an overtime rate because the employees who would be compiling the records already had full-time jobs that did not include responding to public records requests and that he had never considered any other option; he testified that redaction of the records would require a person with "more expertise than just a clerical person." He testified, however, that, in the past year, OHSU had hired an intermediate-level person whose duties included the initial compilation of requested public records for review and redaction by specialized staff. Ogden did not know whether OHSU had ever undertaken a study of how to respond to public records requests most cost-effectively. He stated that he had not "re-figured" the costs of producing the daily logs in a redacted form because plaintiff had already indicated that it disputed the lower assessment and had indicated that it would not pay that amount.

Borum, a senior systems analyst at the primate center, testified that since 1995 approximately 6,000 primates

had lived at the center and that providing plaintiff with "basic animal information, the medical-surgical information, and the laboratory information" would involve generating approximately 125,000 pages of records. On cross-examination, Borum stated that the records could be viewed through any of approximately 40 to 50 personal computers at the center; he noted that displacing a person from an OHSU computer terminal for that purpose would constitute one of the expenses of such a method. He also opined that the records could be viewed on a laptop computer that was brought in from outside the center and on which the appropriate software was installed. He estimated that it would take about 40 to 90 minutes to install the necessary networking software and that an outside person would then be "competent" to inspect the records without further assistance except for monitoring purposes.

In addition to the described testimony, the record includes OHSU's December 2001 letter and the accompanying six-page "sample screen print" showing, according to the letter, redactions of company, experimental medication, and veterinarian names. It also includes OHSU's counsel's June 2002 letter to the district attorney in which he asserted that, after giving its initial, $12,585.40 estimate of costs, OHSU had determined that the records contained exempt information and that, "[d]ue to the nature of the information that would need to be redacted, professional [*i.e.*, veterinarian] time would be needed to review the records" at the cost of $86 per hour plus "additional clerical time" at the cost of $39 per hour, "adding" approximately $151,000 to the cost of producing the records.

On *de novo* review of the described evidence, we cannot conclude that OHSU's assessed fee of approximately $151,000 was "reasonably calculated" to reimburse it for its actual costs of providing the records, as required under ORS 192.440(3). Specifically, where the information that OHSU asserts, and that we have determined, is exempt from disclosure consists only of the *names* of companies, experimental medications, and staff, we do not understand why it is necessary for OHSU to use professional staff, such as veterinarians, to redact that information. To the extent that OHSU's sample screen print is illustrative of the types of redactions

that are necessary, that evidence supports our conclusion.[15] Thus, even assuming, without deciding, that OHSU reasonably chose to provide copies of the records to plaintiff rather than making the records available in electronic or printed form for on-site inspection and that OHSU's asserted per-page copying and shipping costs were reasonable, the total amount of $151,000, based in large part on the described redaction costs, was not.

As to the lesser amount of $12,585.40, the record indicates that that amount also was based, in part, on review by professional staff. To the extent that the "review" was for matters other than the redaction of assertedly exempt material, there is no evidence in the record of what those matters were in the context of the daily logs at issue here or of why professional review was required as to such matters. In addition, as noted, Ogden testified that, because employees who would be compiling the records already had full-time jobs that did not include the responsibility for responding to records requests, it was necessary to compute some of the personnel costs of producing the records at an overtime rate. However, OHSU adduced no evidence showing why it could not instead hire additional, perhaps temporary, staff for the specific purpose of responding to plaintiff's public records request—staff that would be paid, therefore, at a regular, not overtime, rate.[16] For both of those reasons, on this record, OHSU's assessed amount of $12,585.40 also was not reasonably calculated.

In sum, on this record, neither amount assessed as fees by OHSU was reasonable. It follows that the trial court erred in concluding otherwise. We therefore must reverse and remand to the trial court for further proceedings pertaining to that issue.

---

[15] Indeed, to the extent that, as testified by OHSU systems analyst Borum, the records were in electronic form, it appears that predetermined names of companies, experimental medications, and staff could be electronically deleted or replaced by initials, code words, or other obscuring information.

[16] As noted, Ogden testified at trial that OHSU recently had hired a person to respond to public records requests. He also testified, however, that that "development" was "not a part of all this."

### 3. *Fee waiver or reduction*

Having determined that the trial court erred in concluding that OHSU's assessed fees for the daily logs complied with the standards for fees established in ORS 192.440(3), we turn, finally, to plaintiff's second assignment of error, in which it asserts that the trial court erred in concluding that OHSU properly denied plaintiff's fee waiver request. We do so because, although we must reverse and remand this case for further proceedings pertaining to the proper amount of the fees, *see Davis,* 108 Or App at 134, the issue of OHSU's denial of a fee waiver or reduction is likely to arise on remand. *Cf. Carlson v. Benton County*, 154 Or App 62, 961 P2d 248 (1998) (declining to address assignments of error that were "unlikely to arise in their present form" after lower tribunal applied correct legal standard on remand).

Relying in part on the *Attorney General's Public Records and Public Meetings Manual,* plaintiff asserts that the proper criteria for granting or denying a request for a fee waiver or reduction include the identity of the requestor, its ability to pay the assessed fees, the purpose for which the requestor is seeking the information in the records, the character of the information, whether the information is already available to the public, and whether the requestor can demonstrate the ability to disseminate the information to the public. Plaintiff also asserts that, consistently with decisions of the federal courts interpreting FOIA, the fee waiver provision in ORS 192.440 should be interpreted particularly to facilitate access to public records by citizen "watchdog" and nonprofit public interest organizations that challenge agency actions and policies. Plaintiff argues that the evidence at trial demonstrated that OHSU failed even to consider the applicable waiver criteria and that, instead, it denied plaintiff's waiver request based only on the inconvenience and financial detriment to it of furnishing the records.

In response, OHSU argues that, under ORS 192.440(5), the denial of a fee waiver may be overturned only if that denial is "unreasonable" and that, considering the volume of records requested by plaintiff and "the time and expense and interference with OHSU's business" that would

be caused by providing the records, its denial of plaintiff's waiver request was reasonable.

We begin with a review of the statutory standard for fee waivers or reductions. As previously discussed, under ORS 192.440(4), a public body "may" waive or reduce its fees if the public body determines that the waiver or reduction "is in the public interest because making the record available primarily benefits the general public." Under ORS 192.440(5), a person who believes that a public body has unreasonably denied a request for a fee waiver or reduction may seek declaratory or injunctive relief. The appellate courts of this state have not previously had occasion to interpret or apply those provisions. As noted above, we determine the meaning of a statutory provision according to the methodology set out in *PGE*, 317 Or at 610-12, beginning with the text and context of the relevant provisions.

■■ By its terms, the statutory standard for fee waivers and reductions requires that a waiver or reduction be "in the public interest." A matter or action is commonly understood to be "in the public interest" when it affects the community or society as a whole, in contrast to a concern or interest of a private individual or entity. *See Black's Law Dictionary* 1266 (8th ed 2004) (defining "public interest" as the "general welfare of the public that warrants recognition and protection" and as "[s]omething in which the public as a whole has a stake; esp., an interest that justifies governmental regulation"); *cf. State v. Durbin*, 335 Or 183, 63 P3d 576 (2003) (referring to the public interest in the observance of the law and the administration of justice); *Oregonian Publishing*, 329 Or at 402 (determining, for the purpose of a statutory exemption from disclosure of public records, that a report resulting from an investigation of alleged misappropriation of public property pertained to "a matter of paramount public interest and concern"); *City of Portland*, 163 Or App at 554 (concluding, in context of asserted exemption from disclosure of records pertaining to disciplinary investigation of police officer, that "[t]he public has a legitimate interest" in determining an officer's integrity and ability to enforce the law evenhandedly).

In addition, a matter or action "primarily benefits the public," as provided in ORS 192.440(4), when its most important or significant utility or advantage accrues to the public. *See Webster's* at 204, 1800 (defining the verb "benefit" in part as to be useful to, aid, advance, or improve; defining the adverb "primarily" in part as "first of all, fundamentally, principally"; and defining the adjective "primary" in part as "first in order" and "first in rank or importance").

Thus, a waiver or reduction of fees for the furnishing of a public record is "in the public interest because making the record available primarily benefits the public" as provided in ORS 192.440(4) when the furnishing of the record has utility—indeed, its greatest utility—to the community or society as a whole. Under ORS 192.440(4), it is the public body that determines, in the first instance, whether a waiver or reduction of fees meets the described standards.

It is significant, however, that, even if the public body determines that the requestor meets that test, the public body is not required to grant the fee waiver or reduction. Rather, it "may" do so; that is, the public body has discretion whether or not to grant a fee waiver or reduction. *Compare Bacote v. Johnson,* 333 Or 28, 33, 35 P3d 1019 (2001) ("The term 'shall' is a command expressing what is mandatory."), *with State v. Larson,* 325 Or 15, 26, 933 P2d 958 (1997) (use of the word "may" in statute indicates that relevant entity has discretion whether to take the action described therein).

Nevertheless, the public body's discretion must be exercised within the range of lawful options available to it under the relevant law. *See State v. Rogers,* 330 Or 282, 310-12, 4 P3d 1261 (2000) (discretion means the authority of the decision-making body to choose among legally correct outcomes); *McCarthy v. Oregon Freeze-Dry, Inc.,* 327 Or 185, 188, 957 P2d 1200 (1998) (court must exercise its discretion according to relevant statutory criteria). Here, subsection (4) of ORS 192.440 is silent as to what factors properly guide a public body's exercise of discretion regarding a fee waiver or reduction when a request for public records meets the "primarily benefits the public" test.

Again, however, the Public Records Law as a whole embodies a strong policy in favor of the public's right to

inspect public records. *See, e.g., Kluge,* 172 Or App at 455. In addition, subsection (5) of ORS 192.440 provides a remedy— the right to petition the Attorney General or district attorney and the right to seek injunctive or declaratory relief—to a person "who believes that there has been an *unreasonable* denial" of a fee waiver or reduction. (Emphasis added.) ORS 192.440(5) therefore demonstrates that, notwithstanding the legislature's conferral of discretion on the public body, the public body's decision whether to grant or deny a fee waiver or reduction must be reasonable. Reasonableness is an objective standard, under which we examine the totality of the circumstances presented. *Cf. Flug v. University of Oregon,* 335 Or 540, 553, 73 P3d 917 (2003) (in context of tort action against public body, statute referring to a reasonable person's understanding of claimant's intention to assert a claim "invokes an objective reasonableness standard"); *Roop v. Parker Northwest Paving Co.,* 194 Or App 219, 241, 94 P3d 885 (2004), *rev den,* 338 Or 374 (2005) (in context of tort action, court determined whether evidence in record supported objective reasonableness of entity's conduct); *Morsman v. City of Madras,* 191 Or App 149, 153-54, 81 P3d 711 (2003) (in land use context, reasonableness of governmental body's decision in the particular instance is a question of law; although there is no "exact yardstick" as to what is reasonable, court considers applicable legislative and regulatory criteria).

On remand, assuming that plaintiff renews its request for a fee waiver or reduction, the trial court should apply the described statutory standards in light of the recalculated amount of OHSU's fees and any other pertinent evidence.

Reversed and remanded.