Argued November 21, 1975, reversed and remanded with directions
January 12, 1976

JENSEN, *Appellant,*
*v.*
SCHIFFMAN, *Respondent.*
(No. 87147, CA 4670)
544 P2d 1048

*Ellen Rosenblum,* Eugene, argued the cause for appellant. With her on the briefs were Terence Hammons, David Jensen, and Hammons, Phillips & Jensen, Eugene.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Al J. Laue, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Prompted by various allegations of misconduct, the Douglas County District Attorney directed the Douglas County Sheriff's Department to investigate the police department of the City of Reedsport. The sheriff's department submitted a written report to the district attorney. The plaintiff in this case seeks disclosure of that written report pursuant to ORS 192.410 to 192.500 providing for citizen inspection of public records.

The defendant contends, and the trial court held, that the report was exempt from disclosure under ORS 192.500(1)(c). That statute provides:

"The following public records are exempt from disclosure under ORS 192.410 to 192.500 unless the public interest requires disclosure in the particular instance:

"* * * * *

"(c) Investigatory information compiled for criminal law purposes * * *."

Here, as in *Turner v. Reed,* 22 Or App 177, 538 P2d 373, 381 (1975), "on the record thus far made," we hold the report in question appears to be available for public inspection.

We begin with the assumption that the report was originally compiled—at least in part—for a criminal law purpose.[1] But the parties "stipulated and agreed that no criminal prosecutions have been instituted * * * to date as a result of this investigation * * * nor are there any presently anticipated prosecutions." The dispute thus centers on the question of whether ORS 192.500(1)(c) forever exempts all criminal investigation materials from disclosure, or whether the exemption ends when the possible criminal purpose ends.

---

[1] The parties stipulated that the report was compiled for criminal law purposes. This is a conclusion of law, not a stipulation of fact. Whether the report was compiled for criminal law purposes is a question for the courts, on proper evidence, not a question for the parties. *Weisberg v. U.S. Department of Justice,* 489 F2d 1195 (DC Cir 1973).

In this regard, we note that a large percentage of the report deals with problems of mismanagement and inefficiency, rather than possible violation of penal statutes.

[ 13 ]

Plaintiff argues the legislature did not intend to exempt material originally within ORS 192.500(1)(c) from disclosure after there was no longer a criminal law purpose, for example, if no prosecutions were initiated or if all prosecutions were concluded. Defendant argues the legislature intended that material originally within ORS 192.500(1)(c) is forever exempt. To illustrate these respective positions, suppose an investigation of a suspicious fire concluded it started accidentally. Since the investigation started with a possible criminal law purpose,[2] defendant's position would be that the investigation records remain secret. Plaintiff's position would be that the records are available for public inspection once it is determined that no crime was committed.

We find little in the first seven words of ORS 192.500(1)(c) or the legislative history that is helpful in resolving this conflict. There is some indication in the history that a comparable federal statute was used as a model in drafting the Oregon statute. Minutes, Joint Committee on Professional Responsibility, February 26, 1973. At that time, the federal statute, 5 USC § 552(b)(7), exempted from public disclosure "investigatory files compiled for law enforcement purposes."

The federal courts split in interpreting this language. They agreed that 5 USC § 552(b)(7) should be interpreted in light of the purposes to be served by the investigatory-files exemption; they disagreed on what those purposes were. One group of decisions concluded the principal purpose behind the investigatory-files exemption was to prevent the premature disclosure of the results of an investigation so the government would present its strongest case in court; this led to the conclusion that 5 USC § 552(b)(7) did not exempt from disclosure investigatory files which are not connected with pending or contemplated enforcement proceed-

---

[2] We assume that "criminal law purposes" in ORS 192.500(1)(c) is not limited to literal investigations of crimes, but includes investigations to determine whether a crime has been committed.

[ 14 ]

ings.[3] Another group of decisions reasoned that the principal purpose behind the investigatory-files exemption was to keep confidential the process by which the investigation was conducted; this led to the conclusion that 5 USC § 552(b)(7) permanently exempted any investigatory file from disclosure, regardless of whether connected with pending or contemplated proceedings.[4]

The United States Supreme Court alluded to this split of authority in *NLRB v. Sears, Roebuck & Co.,* 421 US 132, 95 S Ct 1504, 44 L Ed 2d 29, 54-55 (1975). That case involved efforts to inspect material somewhat similar to the report sought in this case—investigations of alleged unfair labor practices in which the National Labor Relations Board had determined not to make such a charge. The Supreme Court indicated it was unnecessary to resolve the split in authority in the lower federal courts because Congress had already done so in a 1974 amendment[5] to 5 USC § 552(b)(7). As amended, the exemption from disclosure applies to:

"* * * investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel * * *."

Citing the legislative history of the 1974 amendment, the Supreme Court concluded it amounted to a congressional repudiation of those decisions, n 4, supra,

[3] Annotation, 17 ALR Fed 522, 533-36 (1973).

[4] Annotation, 17 ALR Fed 522, 530-33 (1973).

[5] Pub L No. 93-502, § 2(b) (Nov. 21, 1974).

that had, in effect, reasoned: once an investigatory file exempt from disclosure, always an investigatory file exempt from disclosure. 421 US at 164.

Therefore, it appears that the current federal law in this area is: (1) investigations connected with pending or contemplated proceedings will ordinarily remain secret because disclosure would likely "interfere with enforcement proceedings," 5 USC § 552(b)(7)(A); but (2) investigations not connected with pending or contemplated proceedings will remain secret only if the government establishes that disclosure would produce one of the consequences listed in 5 USC § 552(b)(7)(B) through 5 USC § 552(b)(7)(F).

The analogy between the federal statute and our Oregon statute, ORS 192.500(1)(c), is clear and there is even some indication, noted above, that the pre-1974 version of the former served as a model in drafting the latter. And in any event, we should interpret our statutes in light of the purposes they were intended to serve. We therefore conclude that the current version of 5 USC § 552(b)(7) constitutes a persuasive catalog of the principal purposes to be served by our comparable statute, ORS 192.500(1)(c)[6]

This leads us to reject the extreme positions of the parties here—both plaintiff's claim that reports of investigations must always be disclosed once the criminal purpose had ended, and defendant's claim that such reports forever remain secret. Instead, we hold that ORS 192.500(1)(c) requires identification and balancing of the various purposes for secrecy, such as those stated in the analogous federal statute.[7]

---

[6]We are not engrafting the federal statute onto the Oregon statute. The fact is that the federal statute contains all of the purposes for secrecy that have occurred to us or we have found in the decided cases. Situations might occur in the future, however, that would illuminate additional purposes for secrecy—purposes which would arguably come within the intent of the Oregon statute.

[7]Our conclusion is consistent with the balance of ORS 192.500(1), which indicates the legislature generally intended that secrecy would last

■ Since the parties' respective positions have consistently been those stated and rejected above, we think the proper disposition is to remand for further consideration in light of the interpretation of ORS 192.500(1)(c) we here adopt. By way of further guidance, however, we add that if, as he did in the trial court, the defendant intends to continue to rest solely on our *in camera* examination of the report here in question, it appears to us to be available for public inspection.

■ The stipulation that no prosecutions are contemplated· negates any possibility that disclosure would interfere with enforcement proceedings or deprive a person of a fair trial. As for invasion of privacy, the report deals primarily, if not exclusively, with the conduct of public servants (the members of the Reedsport Police Department) in the performance of their public duties. As the line of cases originating with *New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686, 95 ALR2d 1412 (1964), makes clear, any privacy rights that public officials have as to the performance of their public duties must generally be subordinated to the right of the citizens to monitor what elected and appointed officials are doing on the job.

As for protecting confidential sources, defendant also argues, and the trial court also held, the report is exempt under ORS 192.500(2)(c), which provides:

> "The following public records are exempt from disclosure under ORS 192.410 to 192.500:
>
> "'* * * * *
>
> "(c) Information submitted to a public body in confidence and not otherwise required by law to be submitted,

only as long as there was a reason for secrecy. For example, ORS 192.500(1)(a) exempts records pertaining to litigation from disclosure but "does not apply to litigation which has been concluded." ORS 192.500(1)(c) exempts the record of an arrest from disclosure "only so long as there is a clear need in a particular case to delay disclosure in the course of an investigation." ORS 192.500(1)(d) exempts examination questions from disclosure only "if the examination is to be used again." ORS 192.500(1)(h) exempts certain administrative information from disclosure "until * * * a final administrative determination is made."

where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure * * *."

Defendant presented no evidence on this claim. His sole ORS 192.500(2)(c)-argument is: "Those portions of the report * * * submitted in confidence * * * speak for themselves." We have examined the report. There is no clear indication in it that it contains information submitted in confidence, or that there was a promise not to disclose. At a minimum, it seems the defendant should have called the authors of the report as witnesses to establish such things as a promise of confidentiality. *See, Turner v. Reed,* supra, 538 P2d at 377.

As for disclosure of investigative techniques, nothing in the report here in question reveals other than routine investigative procedures so well known as to be in fact already disclosed to the public.

Finally, there is no indication in the report that disclosure would endanger law enforcement personnel.

The trial court's decision is reversed and this cause is remanded with the following directions: (1) to refer to the defendant for further consideration consistent with this opinion and ORS 192.500(3);[8] and (2) to retain jurisdiction to insure compliance with this opinion, should any dispute about compliance arise.

Reversed and remanded with directions.

---

[8] Plaintiff concedes that a portion of the report is not available for public inspection because it involves a matter that is the subject of pending civil litigation. ORS 192.500(1)(a). It does not appear to us that it will be difficult for defendant to excise that portion of the report pursuant to ORS 192.500(3).