Argued and submitted February 6, affirmed March 8, petition for review denied
June 20, 1995 (321 Or 284)

Zachary Daniel WITHERS,
Kiel Alan Peck and
Seth Jeremy Ring,
*Appellants,*

*v.*

STATE OF OREGON,
*Respondent.*

(94CV0074ST; CA A85596)

891 P2d 675

William F. Gary argued the cause for appellants. With him on the briefs were Glenn Klein, Judith Giers and Harrang Long Gary Rudnick P.C.

Michael D. Reynolds, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John W. Osburn filed a brief *amicus curiae* for Portland School District No. 1J.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiffs seek a declaration that the statutes that prescribe the manner in which public education is funded in this state violate the state and federal constitutions. The trial court entered judgment declaring that the challenged statutes do not violate either the state or the federal constitution. Plaintiffs appeal, and we affirm.

To understand the nature of plaintiffs' claims and our disposition of them, it is necessary to describe briefly the manner in which public education has been and is currently funded in this state. Before 1991, state law provided for public education funding through a combination of local property tax revenues, state general fund revenues and other miscellaneous revenues. By far the largest share of the funding came from local property tax revenues. Because each district assessed its property taxes at different rates, and because the value of real property within each district varied as well, the amount of property tax revenues generated for public education funding varied significantly from district to district. Further disparities were possible if voters defeated tax levy proposals.

In 1987, Oregon voters approved a constitutional amendment, known as the "safety net," which provides that, when local funding is inadequate to meet current operating expenses, school districts are authorized, without local voter approval, to levy property taxes in an amount not more than what was levied for operating purposes in the preceding year. Or Const, Art XI, § 11a. Three years later, the voters approved another constitutional amendment, known as "Measure 5," which imposes progressively more stringent limitations on the rates at which local districts may tax real property. Or Const, Art XI, § 11b(1). Measure 5 also provides that the state legislature must, for a period of five years, "replace from the State's general fund any revenue lost by the public school system because of the limitations." Or Const, Art XI, § 11b(5).

During the first legislative session following adoption of Measure 5, the legislature enacted a two-stage funding law to satisfy its obligation to replace revenues lost because of the new property tax rate limitations. First, for fiscal year

1991-92, the legislature appropriated the necessary general fund revenues and provided that they be distributed in the same manner that general fund revenues had previously been distributed to the local school districts. Or Laws 1991, ch 162, § 8; Or Laws 1991, ch 780, § 29. Second, for fiscal year 1992-93, the legislature created a "state school fund" and appropriated for that fund enough general fund revenues to again cover the reductions in property tax revenues occasioned by Measure 5. Or Laws 1991, ch 780, § 3. The legislature adopted a formula for distributing those funds to the local school districts. Or Laws 1991, ch 780, § 4. The formula itself is complex and need not be described in detail here. Suffice it to say that, under the formula, school districts are to be awarded sufficient state general fund revenues so that, when those funds are combined with remaining property tax revenues, each district receives a total amount of financial support that is roughly equal on a per student basis.

Because many districts historically were funded at levels substantially higher or lower than the new equalized level, the legislature enacted a transition mechanism. It imposed a limit on the extent to which a school district's total funding level could increase or decrease because of implementation of the formula for distributing state general fund revenues; districts whose funding levels previously were higher than what the formula would produce could suffer no reduction from prior levels, while districts with historically lower total funding levels could enjoy an increase of no more than 25 percent of the prior year's budget. Or Laws 1991, ch 780, § 4a.

During the 1993 legislative session, the legislature retained the state school fund distribution formula largely unchanged and, once again, appropriated general fund revenues to replace property tax revenues lost under Measure 5. The legislature also amended its transition mechanism for implementation of the formula. Under the amended law, for fiscal years 1993-94 and 1994-95, no district may receive total funding amounting to less than 90 percent of what it received the previous fiscal year. In addition, for those fiscal years, no district may receive an increase in funding of more than 25 percent over what it had received the previous fiscal year. Or Laws 1993, ch 61, §§ 1(2), 2. Those districts that remained

under the roughly equalized level of total funding were then entitled to an additional "equity" grant. Or Laws 1993, ch 61, § 1(3). The transitional mechanism adopted by the legislature expires at the end of fiscal year 1994-95, after which time—barring further legislative action—all districts are to receive state general fund revenues according to the statutory distribution formula. Or Laws 1993, ch 61, §§ 1, 2.

With that background, we turn to the facts of the case. Because this case was appealed from a judgment on the pleadings, we accept as true all facts alleged in the complaint. *Beason v. Harcleroad*, 105 Or App 376, 380-84, 805 P2d 700 (1991).

Plaintiffs are three junior high school students who attend school in the Redmond School District. They allege that the statutory formula for distributing state school fund revenues is "fair and equitable." Their complaint is, in essence, that the state has unconstitutionally failed to implement that formula. According to plaintiffs, because of the transition mechanism in the current law, which limits increases in total funding levels to 25 percent of prior funding levels, Redmond School District is receiving less money from the state school fund than it would have received under the formula without the limitation. They further allege that, because of that limitation in state funding, Redmond School District has been unable to offer them programs and classes that it would have been able to offer without the limitation, and that other districts not subject to the limitation are currently offering those same programs. According to plaintiffs, the result of the current limitation on increases in total funding levels is that they are being denied educational opportunities that are available in other districts not subject to the limitation. That denial of educational opportunities, plaintiffs conclude, violates Article VIII, section 3, and Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the federal constitution.

Defendant answered and then moved for judgment on the pleadings, arguing that the transitional limitations on the extent to which the statutory funding distribution formula is implemented, and any resulting disparities in total

funding, do not violate either the state or the federal constitutions. The trial court granted defendant's motion and entered judgment declaring that the current funding system does not violate either the state or the federal constitution. On appeal, plaintiffs assign error to the trial court's declaration.

■ We review the entry of judgment on the pleadings as a matter of law. *Wyers v. Dressler*, 42 Or App 799, 804, 601 P2d 1268 (1979), *rev den* 288 Or 527 (1980). Entry of judgment on the pleadings is proper if the allegations in the pleadings affirmatively show that plaintiffs cannot prevail as a matter of law. *Beason v. Harcleroad, supra*, 105 Or App at 379.

Plaintiffs first argue that the trial court erred in declaring that the current statutory system of public education funding does not violate Article VIII, section 3, of the Oregon Constitution. That section of the constitution provides:

"The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools." Or Const, Art VIII, § 3.

According to plaintiffs, current funding laws result in disparities in total funding levels from district to district, which, in turn, result in disparities in educational opportunities from district to district. Those disparities, plaintiffs contend, result in "a public school system that is not uniform."

■ Defendant argues that plaintiffs' argument is defeated by the Oregon Supreme Court's decisions in *Olsen v. State ex rel Johnson*, 276 Or 9, 554 P2d 139 (1976), and *Coalition for Equit. School Fund. v. State of Oregon*, 311 Or 300, 811 P2d 116 (1991). We agree with defendant that *Olsen* controls the disposition of plaintiffs' Article VIII, section 3, claim.

In *Olsen*, the plaintiffs argued that the system of public education funding then in effect, which relied heavily on local property tax revenues, resulted in individual districts receiving widely varying total amounts of funding. The plaintiffs argued that the disparities in funding available produced disparities in educational opportunities from district to district, which violated the constitutional mandate to provide for the establishment of a "uniform, and general system of

Common schools." The plaintiffs argued that the requirement that the school system be "uniform" means that "the amounts available for providing education opportunities in every district must approach equality."

The Supreme Court rejected the plaintiffs' proposed construction of Article VIII, section 3:

"We are of the opinion that Art VIII, § 3, is complied with if the state requires and provides for a minimum of educational opportunities in the district and permits the districts to exercise local control over what they desire, and can furnish, over the minimum." 276 Or at 27.

The court then quoted from a California decision, which construed a similar constitutional provision:

" '[W]e have never interpreted the constitutional provision to require equal school spending; we have ruled only that the educational system must be uniform in terms of the prescribed course of study and educational progression from grade to grade.' " 276 Or at 27 (quoting *Serrano v. Priest*, 5 Cal 3d 584, 596, 96 Cal Rptr 601, 487 P2d 1241 (1971), *cert den* 432 US 907 (1977)).

In *Coalition*, the plaintiffs urged the Supreme Court to overrule *Olsen*. They argued that Article VIII, section 3, requires the state to provide sufficient funds — without reliance on property tax revenues — to satisfy all state educational standards. They also argued that the same provision operates as a guarantee that all public school students receive equal educational opportunities or equal resources, without regard to the school districts in which they reside. The Supreme Court held that it did not need to reach the issue of whether *Olsen* still represents a correct construction of Article VIII, section 3, because the voters' adoption of the "safety net" amendment to the state constitution was dispositive. According to the Supreme Court, the safety net amendment "explicitly directs school districts to meet state standards with property taxes." *Coalition for Equit. School Fund. v. State of Oregon, supra*, 311 Or at 309. (Emphasis deleted.) As a result, the court held, the constitution now recognizes "that school districts may have disparate amounts to fund schools, depending on the amount that voters are willing to pay." *Coalition for Equit. School Fund. v. State of Oregon, supra*, 311 Or at 310.

■ In this case, plaintiffs do not complain that current funding is inadequate to ensure that they receive the minimum education required by law. Instead, they assert that disparities in funding and educational opportunities violate the requirement that there be a "uniform" public education system. Those are precisely the same arguments that the court rejected in *Olsen*. Accordingly, we must reject them in this case as well.

Plaintiffs nevertheless insist that neither *Olsen* nor *Coalition* controls. According to plaintiffs, when both cases were decided, public education was funded predominantly by local property tax revenues. Funding under the current law, plaintiffs contend, is quite different. Plaintiffs argue that, with the passage of Measure 5, the state now controls and funds the public education system and, therefore, must do so in a "uniform" manner that does not include disparities in funding and educational opportunities.

■ We are unpersuaded. First, nothing in *Olsen* suggests that the court's construction of Article VIII, section 3, rested on the nature of the public education funding system currently in place. The court said, categorically and with little discussion, that Article VIII, section 3, requires only a uniform "prescribed course of study," and that it does not require funding or educational opportunity to "approach equality." *Olsen v. State ex rel Johnson, supra,* 276 Or at 26-27. The court did discuss, at some length, the role of "local control" in the financing system, but it did so in the context of disposing of the plaintiffs' arguments under an entirely different provision of the constitution, not Article VIII, section 3. *See* 276 Or at 15-26.

■ Second, plaintiffs' argument that the court in *Coalition* did not address the constitutionality of school funding legislation enacted since the passage of Measure 5 misses the point; *Olsen* still controls. And, according to *Olsen*, Article VIII, section 3, requires only a uniform prescribed course of study, not equality of educational opportunities or resources from school district to school district. The trial court did not err in concluding that the current funding system does not violate Article VIII, section 3.

■    Plaintiffs next argue that the trial court erred in declaring that the current system of distributing state school fund revenues does not violate Article I, section 20, of the Oregon Constitution. That section of the constitution provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which upon the same terms, shall not equally belong to all citizens."

The Supreme Court has explained that, under Article I, section 20, the state may not deny a member of a "true class" of citizens a privilege that the state provides to others, unless that difference in treatment has a rational basis. *Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 467, 814 P2d 1060 (1991); *Ag West Supply v. Hall*, 126 Or App 475, 480, 869 P2d 383 (1994). A "true class" is a class of persons distinguished on the basis of preexisting characteristics and not created by the challenged law itself. *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den* 498 US 819 (1990).

Plaintiffs contend that they are members of a class of students who, because of their residence in a school district subject to the statutory limit on increases in funding from the state, are being denied educational opportunities in their district that are currently available to students in other districts. Plaintiffs contend that there is no rational basis for that difference in treatment of students from district to district.

Defendant contends that the Supreme Court's decision in *Coalition* disposes of plaintiffs' Article I, section 20, challenge. Defendant argues that, in *Coalition*, the court rejected the plaintiffs' contention that disparities in funding and educational opportunities from district to district violated Article I, section 20, and we should reject plaintiffs' similar contentions in this case. Plaintiffs respond that the court in *Coalition* expressly limited its decision to the nature of the funding system that existed at that time, and that it cannot be read to summarily foreclose the assertion of their constitutional challenge to an entirely different system.

■    We agree with plaintiffs that *Coalition* does not control their Article I, section 20, claim. The basis of the court's disposition of the plaintiffs' claim was the passage of the

safety net amendment, which the court said permitted the "district-to-district differences" in funding and educational opportunities that are "inherent in a system that relies substantially on local *ad valorem* property taxes." 311 Or at 310-11. The court noted the recent passage of Measure 5, but it expressly declined to speculate about the impact of that constitutional amendment on future school funding. Meanwhile, the legislature has created an entirely different system of public education funding, which did not exist when *Coalition* was decided. *Coalition* provides no instruction on whether that system violates Article I, section 20.

Defendant argues that, even if we conclude that *Coalition* does not control, plaintiffs cannot prevail on their Article I, section 20, claim, because plaintiffs are not being denied any educational opportunities on the basis of their geographic location. Instead, defendant argues, any differences in funding and program offerings from district to district are a product of historic spending patterns in each district. Even if the current system does result in funding differences on the basis of geographic location, defendant contends, those differences are grounded in a rational legislative objective of avoiding the draconian effects of sudden equalization, particularly to those districts whose level of funding historically has been substantially higher than the average, by gradually phasing in the implementation of the statutory funding formula.

Plaintiffs reply that the avoidance of possible harm to school districts that historically have been funded at higher than average levels is not a rational justification for depriving plaintiffs of their constitutional right to equal educational opportunities and funding from the state.

We need not address whether defendant is correct that the current system does not discriminate against a true class, because, even if it does, there is a rational basis for the discrimination. It must be remembered that the focus of plaintiffs' challenge is not on the formula by which state school fund revenues are to be distributed to the individual districts. Plaintiffs, in fact, concede that, if distribution were effected in accordance with the formula, they would have no constitutional claims to assert in this case. The focus of plaintiffs' challenge is, instead, the mechanism by which the

legislature has chosen to phase in gradually the use of the statutory formula. Plaintiffs argue that the legislature cannot constitutionally adopt such a phased implementation of the funding formula. According to plaintiffs, they have a constitutional right to total funding under the formula *now*.

■     We disagree with plaintiffs. The legislature has made a considered policy choice to phase in implementation of the state school fund distribution formula over a period of time. The apparent purpose of that phased-in implementation of the funding formula is to avoid the harm that would likely result from immediate equalization of funding. In school districts that historically received higher levels of total funding, for example, immediate equalization would require substantial budget cuts, elimination of programs and the termination of teachers and other staff. Such abrupt funding changes could cripple those districts in their abilities to provide basic education services to their students. It is entirely reasonable for the legislature to provide such districts with a reasonable window within which to prepare for eventual reductions in funding and to make appropriate program and operational changes to accommodate those funding changes in a fashion that is less disruptive to administrators, teachers and students alike.

■     Plaintiffs argue that it simply is not rational for the legislature to postpone equalizing educational opportunities to *students* on the basis of concerns for adverse effects to school *districts*. School districts, they argue, have no rights under Article I, section 20, of the Oregon Constitution. Plaintiffs' argument, however, ignores the fact that it is rational for the legislature to have concluded that immediate and drastic cuts in school district funding would have a direct and deleterious effect on the school children in those districts. Thus, the question becomes whether it is better policy to implement incrementally funding equalization to avoid harming students in some districts than to require immediate funding equalization to benefit students in other districts. That is precisely the sort of public policy choice the legislature is constitutionally empowered to make and which we are in no position to second-guess. *See State ex rel Nilsen v. Whited*, 239 Or 149, 154, 396 P2d 758 (1964). Accordingly, we conclude that there is a rational basis for the existing temporary

limitations on the implementation of the state school fund distribution formula and for the resulting disparities in funding and educational opportunities from district to district. The trial court, therefore, did not err in reaching the same conclusion.

■      Plaintiffs finally argue that the trial court erred in declaring that the current public education funding statutes do not violate the Equal Protection Clause of the Fourteenth Amendment to the federal constitution. That clause provides:

> "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

In *San Antonio School District v. Rodriguez*, 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973), the United States Supreme Court held that, because education is not a fundamental right, when a school funding system is challenged on Fourteenth Amendment grounds, the proper test is whether the challenged law "bears some rational relationship to a legitimate state purpose." 411 US at 44.

Plaintiffs argue that, for the same reasons that the current law is not grounded in a rational basis under Article I, section 20, of the Oregon Constitution, the law bears no rational relationship to a legitimate state purpose under the Equal Protection Clause. Likewise, defendant argues that, for the same reason that the law survives challenge under Article I, section 20, of the Oregon constitution, it also survives plaintiffs' challenge under the Equal Protection Clause.

We agree with defendant. The legislature's reliance on a phased-in application of the distribution formula bears a rational relationship to the legitimate state purpose of avoiding possible devastation of some school district budgets and education programs that could result from a sudden equalization of public education funding. In that regard, the United States Supreme Court's comments in *Rodriguez* bear noting. Concerning the school funding system at issue in that case, the Court said:

> "[I]n deciding the constitutional propriety of the limitations in such a reform measure we are guided by the familiar principles that a 'statute is not invalid under the Constitution because it might have gone farther than it did,' * * * that

a legislature need not 'strike at all evils at the same time,' * * * and that 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " 411 US at 39 (quoting *Katzenbach v. Morgan*, 384 US 641, 657, 86 S Ct 1717, 16 L Ed 2d 828 (1966)).

The trial court did not err in declaring that the current funding system does not violate the Equal Protection Clause of the Fourteenth Amendment to the federal constitution.

Affirmed.