Argued and submitted April 11, reversed and remanded December 24, 2008

Craig COLBY,
*Plaintiff-Appellant,*

*v.*

Karen GUNSON,
State Medical Examiner,
*Defendant-Respondent.*

Marion County Circuit Court
06C15785; A133979

199 P3d 350

Craig P. Colby argued the cause and filed the briefs *pro se.*

Kaye Ellen McDonald, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

Wollheim, J., concurring.

**SERCOMBE, J.**

This case concerns whether defendant, the state medical examiner, was obliged to supply plaintiff with a copy of the autopsy and laboratory tests report demanded under the Public Records Law, ORS 192.410 to 192.505. The trial court concluded that the record was exempt from public disclosure under ORS 192.502(9)(a), and entered a judgment dismissing plaintiff's complaint. After review of that judgment for errors of law, *Withers v. State of Oregon*, 133 Or App 377, 382, 891 P2d 675, *rev den*, 321 Or 284 (1995), we conclude that the record is not exempt from disclosure under ORS 192.502(9)(a). Accordingly, we reverse the judgment and remand for further proceedings.

The judgment was based on allegations in the pleadings; the facts are largely taken from plaintiff's complaint. On January 4, 2006, a Portland Police Officer shot and killed Young. Defendant investigated Young's death and compiled a report that included the results of an autopsy and laboratory tests performed on Young. Plaintiff was not Young's parent, spouse, child, or personal representative. Nor was he subject to potential criminal or civil liability for the death. Nonetheless, plaintiff asked defendant for a copy of the report, arguing that it was a public record and was subject to public inspection. Defendant refused to disclose the report, concluding that it was exempt from public disclosure. Plaintiff petitioned the Attorney General to determine whether the report was subject to public inspection. ORS 192.450(1). The Attorney General issued an order denying plaintiff's petition.

Plaintiff then instituted this proceeding under ORS 192.450(2), seeking an order requiring defendant to disclose the report. Because the only question before the court was whether the relevant statutes required defendant to disclose the report, plaintiff moved for judgment on the pleadings. ORCP 21 B. The trial court concluded that ORS 146.035(5), discussed below, exempts medical examiner autopsy reports from public disclosure unless the person seeking the report is within the class of persons listed in ORS 146.035(5). Accordingly, the court determined that the record was exempt from disclosure under ORS 192.502(9) as a matter of law. The

court issued an order granting defendant judgment on the pleadings and entered a general judgment of dismissal. Plaintiff appeals.

Plaintiff contends that disclosure of the report is required by the Public Records Law. The core provision in that law, ORS 192.420(1), states that "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505."[1] Plaintiff argues that the report is not expressly exempt from disclosure under ORS 192.501 to 192.505, and, therefore, plaintiff has a right to inspect it. ORS 192.501 and ORS 192.502 list categories of records that are exempt from disclosure under the Public Records Law. Defendant asserts that medical examiner reports are exempt from disclosure under ORS 192.502, which provides, in part:

"The following public records are exempt from disclosure under ORS 192.410 to 192.505:

"* * * * *

"(9)(a) Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law."

Defendant argues that disclosure of the autopsy and laboratory tests report is restricted by ORS 146.035(5), which provides, in part:

"Any parent, spouse, child or personal representative of the deceased, or any person who may be criminally or civilly liable for the death, or their authorized representatives respectively, may examine and obtain copies of any medical examiner's report, autopsy report or laboratory test report ordered by a medical examiner under ORS 146.117."

---

[1] The parties do not dispute that the report is a "public record." ORS 192.410(4)(a) defines "public record," for purposes of the Public Record Law, to include "any writing that contains information relating to the conduct of the public's business, including but not limited to court records, mortgages, and deed records, prepared, owned, used or retained by a public body regardless of physical form or characteristics." The medical examiner is a "public body" under the law; ORS 192.410(3) defines "public body" to include "every state officer." The only issue between the parties concerning the enforcement of ORS 192.420(1) is whether the medical examiner report is exempt from disclosure as "expressly provided by ORS 192.501 to 192.505."

Defendant reads ORS 146.035(5) to be ambiguous, arguably limiting public access to medical examiner reports to only those persons specified in the statute. Defendant suggests that "[t]he necessary implication of enumerating those individuals who *may* examine a medical-examiner autopsy report is to deny the right of inspection to others." Defendant reasons that, if ORS 192.502(9)(a) is construed to allow examination of medical examiner reports by all persons, then ORS 146.035(5) is rendered meaningless. Finally, defendant relies on the legislative history of the statute, adopted in 1973 as Oregon Laws 1973, chapter 408, section 4 (House Bill 2279), to confirm legislative intent to allow access to medical examiner reports by those with a legitimate interest in the report, but to provide discretion to the medical examiner to refuse inspection by others. As explained below, we conclude that the operation of ORS 146.035(5) does not make the requested report exempt from disclosure under ORS 192.502(9)(a).

We first examine the text of ORS 146.035(5) to determine if it is the type of law that fits within the category of laws defined by ORS 192.502(9). The text of ORS 192.502(9)(a) exempts from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." Thus, the initial question is whether ORS 146.035(5) prohibits or restricts the disclosure of records or information or otherwise makes records confidential or privileged so as to effect their nondisclosure.

At least on its face, ORS 146.035(5) does not have that effect. The statute grants the described persons a right to inspect certain medical examiner reports. The statute does not prevent the medical examiner from disclosing those reports to a person not named in the law. ORS 146.035(5) does not make a medical examiner report confidential or privileged, nor does it penalize the disclosure of a medical examiner report.[2] Because ORS 146.035(5) does not explicitly

---

[2] By comparison, ORS 146.780, another statute in the medical examiner law, is an example of a law regulating disclosure of public records. ORS 146.780 makes confidential mandatory reports to the medical examiner of injuries by physicians under ORS 146.750. ORS 146.780 provides:

restrict or prohibit the disclosure of medical examiner reports or make those records confidential or privileged, ORS 146.035(5) is not within the scope of the ORS 192.502(9)(a) exemption.

Defendant asserts that ORS 146.035(5) has an implicit effect of restricting disclosure of medical examiner reports and that this effect brings the statute within the purview of the laws described by ORS 192.502(9)(a). We disagree with both propositions, that ORS 146.035(5) creates that implicit effect and that any implicit operation of a statute is sufficient to qualify the law under ORS 192.502(9)(a).

Defendant reasons that ORS 146.035(5) restricts access to medical examiner records because it grants that access to those records to only certain persons and necessarily implies that other persons lack that right. Defendant relies on a maxim of statutory construction, *expressio unius est exclusio alterius*, "the expression of one is the exclusion of others." We qualified the value of that maxim in determining statutory intent in *State ex rel City of Powers v. Coos County Airport*, 201 Or App 222, 234, 119 P3d 225, *rev den*, 341 Or 197 (2005):

> "[B]oth we and the Supreme Court have repeatedly warned the bench and bar that *expressio unius* is not a rule of law but is instead a guide to understanding legislative intent. * * * The maxim 'is to be applied with caution and merely as an auxiliary rule to determine the legislative intention.' *Cabell et al. v. City of [Cottage] Grove et al.*, 170 Or 256, 281, 130 P2d 1013 (1942); *see also* Frank E. Horack Jr., 2 *Sutherland Statutory Construction* § 4917, 418 (3d ed 1943) (warning that the maxim 'requires great caution in its application, and in all cases is applicable only under certain conditions')."

Thus, the *expressio unius* guide to legislative intent corroborates, rather than supplies, meaning to a statute.

---

"Notwithstanding the provisions of ORS 192.410 to 192.505 relating to confidentiality and accessibility for public inspection of public records, records and reports made under the provisions of ORS 146.750 are confidential and are not accessible for public inspection."

*See generally* Reed Dickerson, *The Interpretation and Application of Statutes*, 23 (1975) (citing *expressio unius* as an example of "maxims [that] masquerade as rules of interpretation while doing nothing more than describing results reached by other means"). If legislative intent to completely regulate an area can be inferred from the text or context of a law, then the statement of the regulation necessarily negates a different rule.

For example, in *Waddill v. Anchor Hocking*, 330 Or 376, 8 P3d 200, *adh'd to on recons*, 190 Or App 172, 78 P3d 570 (2000), the issue was whether a defendant could pursue a defense on appeal that the plaintiff failed to state ultimate facts in the complaint that were sufficient to constitute a claim. The plaintiff argued that the defense could be raised only at the times and in the manner specified in ORCP 21 G(3) and that the rule's specifications did not include raising the defense for the first time on appeal. The defendant argued that, before the adoption of the civil procedure rule, Oregon court decisions allowed a party to raise the defense of failure to state a claim for the first time on appeal. The court concluded that ORCP 21 G(3) stated the exclusive manner by which a party may raise the defense because the adoption of the civil procedure rules "superseded" any different *common law*. *Id.* at 384. It was in that context that the court determined that, under the *expressio unius* maxim, "the specification of those three times indicates an intent * * * to limit the times at which a party may raise that defense to those three and to make the defense otherwise unavailable." *Id.* at 382. The exclusive effect of the adopted rule depended on finding legislative intent to completely regulate civil procedure from other parts of the law.

There is nothing in the text or context of ORS 146.035(5) that supplies a similar legislative perspective on the purpose of the statute that suggests a legislative intent to completely describe the state's policy on disclosure of medical examiner records by the terms of ORS 146.035(5). As noted earlier, the text of the statute does not regulate disclosure of records, and it certainly does not state comprehensive policy. The remainder of the medical examiner statutes do not provide accompaniment to any purported comprehensive records policy by describing procedures for the production of

records or processes for resolving disputes about records disclosure.[3]

Instead, another statutory scheme, the Public Records Law, sets out state policies for the right to inspect and copy public records, including medical examiner reports. Similar statutes existed before the adoption of ORS 146.035(5) in 1973. As described in *Oregonian Publishing v. Portland School Dist. No. 1J*, 329 Or 393, 398-99, 987 P2d 480 (1999):

> "Oregon has a long-standing policy in favor of access to public records. The general statement of legislative policy regarding public records has remained virtually unchanged for almost 140 years. An 1862 law originally granted Oregon citizens the statutory right to 'inspect any public writing of this state, except as otherwise provided by this code or some other statute.' General Laws of Oregon, ch 8, § 707, p 326 (Deady 1845-1864). Although the 1909 Legislature limited that right to persons having 'a lawful purpose,' Or Laws 1909, ch 98, the legislature deleted that restriction 52 years later and restored the general right to inspect any public record, subject to certain statutory exemptions, Or Laws 1961, ch 160, § 4. The legislature made a structural revision of public records law in 1973, gathering records statutes into ORS chapter 192 and organizing the basic structure of the public records law as it is today."

Comprehensive policy on the disclosure of medical examiner reports is found someplace other than ORS 146.035(5) and its statutory neighborhood. Thus, the setting of ORS 146.035(5) does not suggest that the statute prescribes the exclusive means by which production of medical examiner reports may

---

[3] In fact, a record nondisclosure review process for medical examiner reports was repealed by HB 2279 when ORS 146.035(5) was adopted in 1973. Before the passage of HB 2279, *former* ORS 146.560(2), *repealed by* Or Laws 1973, ch 408, § 35, provided that a person who has been denied access to medical examiner reports "may compel access to the records in the manner provided in ORS 432.130." ORS 432.130 (1971), *amended by* Or Laws 1983, ch 709, § 25, provided that a "court, if satisfied that the petitioner has a direct and proper interest in the record, shall make an order authorizing and directing the inspection of the record specified in the petition." Moreover, *former* ORS 146.560(2) implied that the medical examiner had authority to deny access to some medical examiner reports. The repeal of that statute in 1973 took away any implied authority of the medical examiner to deny access.

be compelled. Therefore, it is not appropriate to presume that effect from the text of ORS 146.035(5) alone and the application of the *expressio unius* maxim.

Defendant argues, nonetheless, that a comprehensive nature of ORS 146.035(5), an effect to allow *and* restrict access to medical examiner reports, should be inferred because the statute lacks meaning otherwise. Defendant reasons that, if access to medical examiner reports is not restricted by ORS 146.035(5), if persons listed in the statute, as well as others, can obtain copies of the reports under the Public Records Law, then ORS 146.035(5) is redundant by allowing access to the records that otherwise exists and has no practical effect. Defendant urges a construction of ORS 146.035(5) that gives it some meaning.

That meaning comes from the application of ORS 146.035(5) together with parts of the Public Records Law that *disallow* access to public records, including medical examiner reports. As noted earlier, ORS 192.420(1) creates a right to inspect public records, including medical examiner reports, "except as otherwise expressly provided by ORS 192.501 to 192.505." ORS 192.501 and ORS 192.502 list categories of records that are exempt from the obligation to disclose. At least two of those exemptions could excuse the medical examiner from the obligation to provide a report to a requestor. ORS 192.501 provides, in part:

> "The following public records are exempt from disclosure under ORS 192.410 to 192.505 unless the public interest requires disclosure in the particular instance:
>
> "* * * * *
>
> "(3) Investigatory information compiled for criminal law purposes. * * *"

We have construed this exemption to shield records of criminal investigations based upon a "balancing of the various purposes for secrecy," including protecting against "an unwarranted invasion of personal privacy." *Jensen v. Schiffman*, 24 Or App 11, 15, 16, 544 P2d 1048 (1976). An autopsy report may, in some circumstances, be exempt from public disclosure under ORS 192.501(3).

Similarly, ORS 192.502 provides an exemption from the requirement of disclosure that could apply to some medical examiner reports. That statute provides, in part:

"The following public records are exempt from disclosure under ORS 192.410 to 192.505:

"* * * * *

"(2)   Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, if public disclosure would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy."

■       The legal effect of ORS 146.035(5) is to override any excuse not to disclose a medical examiner report to persons listed in the statute that might exist by ORS 192.501(3), ORS 192.502(2), or other parts of the Public Records Law. An exemption from disclosure under the Public Records Law allows, but does not require, nondisclosure of the record. As noted in *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37-38, 791 P2d 854 (1990), "[i]f the public body is satisfied that a claimed exemption from disclosure is justified, it may, *but is not required to*, withhold disclosure of the information." Within its scope of operation, ORS 146.035(5) removes any discretion to not disclose a medical examiner report that is available under the Public Records Law. That legal effect of the statute undercuts defendant's construction of the law to have an implied and broader meaning because a literal reading of the statute has no practical consequence.

■       Moreover, defendant's assertion that ORS 146.035(5) creates an implied exemption from disclosure under the Public Records Law is inconsistent with the way Oregon courts construe that law and determine the scope of the exemptions from disclosure. Any exemption from disclosure under the Public Records Law must be explicitly stated by statute and not merely implied by the law. The underlying policy of the Public Records Law favors the disclosure of public records. Oregon has a "strong and enduring policy that public records and governmental activities be open to the public." *Jordan v.*

*MVD*, 308 Or 433, 438, 781 P2d 1203 (1989). Consistently with this policy, ORS 192.420(1) creates a broad right to inspect public records "except as otherwise expressly provided by ORS 192.501 to 192.505." That means that exemptions from disclosure must be "expressly" stated in the law. ORS 192.420(1) forbids giving effect to any implicit and broader meaning of a statutory exemption from disclosure under ORS 192.501 to 192.505 than what the statute "expressly" allows. That is no less true when the statutory exemption incorporates other statutes, as is the case with ORS 192.502(9). Only the "express" effect of those statutes, as well, is relevant to the exemption analysis under ORS 192.420(1). On its face, ORS 146.035(5) creates rights to examine and copy certain medical examiner records. It does not expressly limit or restrict access to those records. Therefore, there is no "express" exception to the right of inspection for those records provided by ORS 192.420(1). *See Morrison v. School District No. 48*, 53 Or App 148, 152, 631 P2d 784 (1981) ("exceptions should be narrowly and specifically defined").

■     Oregon courts have paraphrased this rule of construction of the Public Records Law to note that "disclosure is the rule. Exemptions from disclosure are to be narrowly construed." *Guard Publishing Co.*, 310 Or at 37; *see also In Defense of Animals v. OHSU*, 199 Or App 160, 168, 112 P3d 336 (2005). A "narrow construction" of a public records exemption is one that favors disclosure. That "narrow construction" rule can be applied to resolve ambiguity about the scope of a statutory public records exemption. The "narrow construction" rule means that, if there is a plausible construction of a statute favoring disclosure of public records, that is the construction that prevails. Here, a construction of ORS 146.035(5) that views the statute only as creating, rather than restricting, a right to inspect and copy records, is to be preferred. In sum, the text of ORS 192.420(1) and our method of construing statutory exemptions to the required disclosure of public records confine exemptions to those that are explicitly stated in the law and preclude exemptions by implication. Defendant's argument that ORS 146.035(5) implicitly restricts disclosure of a medical examiner report under ORS 192.420(1) fails for those reasons.

■ Finally, the context of ORS 192.502(9)(a) supports the conclusion that ORS 146.035(5) is not a law referenced by ORS 192.502(9)(a). In construing an exemption, the statutory construction methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), must be applied "keeping in mind the policy in favor of disclosure." *In Defense of Animals*, 199 Or App at 172. That requires consideration of both the text and the context of a statute as the primary guide to its meaning. Prior versions of the same statute are relevant context. *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) ("[W]ording changes adopted from session to session are part of context of the present version of the statute being construed."). Context can also be supplied by other provisions of the same statute, either in its current form or as originally approved by the legislature. *Morsman v. City of Madras*, 203 Or App 546, 561, 126 P3d 6, *rev den*, 340 Or 483 (2006) ("surrounding statutory framework" as relevant context in construing the meaning of a statute).

As originally adopted, the initial version of ORS 192.502(9)(a) explicitly listed the statutes within the exemption and did not include ORS 146.035(5) as a law allowing nondisclosure of public records. That scope of the exemption continued when the current text of the provision was adopted in 1987.

The 1973 Legislative Assembly adopted the two statutes that frame the controversy in this case. Oregon Laws 1973, chapter 794, codified the current structure of the Oregon Public Records Law. The new law created a right to inspect any public record "except as otherwise expressly provided by section 11 of this 1973 Act." Or Laws 1973, ch 794, § 3. One of the unconditional prohibitions, Oregon Laws 1973, chapter 794, section 11(2)(h), exempted from disclosure:

"Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under ORS 1.440, 7.211, 7.215, 41.675, 44.040, 57.850, 146.780, 173.230, 179.495, 181.540, 306.129, 308.290, 314.835, 314.840, 336.195, 341.290, 342.850, 344.600, 351.065, 411.320, 416.230, 418.135, 418.770, 419.567, 432.060, 432.120, 432.425, 432.430, 474.160,

476.090, 483.610, 656.702, 657.665, 706.720, 706.730, 715.040, 721.050, 731.264 or 744.017[.]"

That exemption was codified as ORS 192.500(2)(h) (1973) and is the precursor of ORS 192.502(9)(a).

In separate legislation, the 1973 Legislative Assembly rewrote the medical examiner statutes. Or Laws 1973, ch 408. Section 4(6) of the law created rights to inspect and copy certain medical examiner reports and was codified as ORS 146.035(6) and is now ORS 146.035(5) with some modifications. Section 29 of the 1973 law rewrote ORS 146.780, noted earlier, to confirm the confidentiality of injury reports to the medical examiner by physicians under ORS 146.750. Those parts of the 1973 medical examiner statutes were adopted at the same time as the 1973 Public Records Law, relate to the same subject matter, and should be read *in pari materia* and harmonized with each other. *Bauer v. Poppen*, 13 Or App 474, 478, 510 P2d 1346 (1973) (public records and related law adopted in 1947 "were adopted at the same time and relate to the same subject matter * * * [and] should be read *in pari materia* and harmonized").

For our purposes, two things are significant in the interaction of the text of the new medical examiner statutes and the new Public Records Law in 1973. First, the new medical examiner statute continued to classify physician reports as confidential and "not accessible for public inspection." But the law did not include similar protections for medical examiner reports, autopsy reports, and laboratory test results. Instead, the law created a limited right to inspect those documents.

Second, the new Public Records Law specifically classified ORS 146.780, the physician report confidentiality statute in the new medical examiner statutes, as one of the statutes that make a record exempt from disclosure by making the record confidential or restricting access to the record. But the new Public Records Law did not classify the autopsy report access right statute, ORS 146.035(5), then numbered ORS 146.035(6), as one of those statutes.[4] ORS 192.500(2)(h) (1973) listed ORS 146.780, among many other laws, as a law

---

[4] ORS 146.035(6) was renumbered as ORS 146.035(5) in 1987. Or Laws 1987, ch 142, § 1.

making a public record "confidential or privileged." The disclosure exemption did not list former ORS 146.035(6) as a law that prohibited or restricted access to a public record. Rather, the legal effect of *former* ORS 146.035(6) (1973) was to require disclosure of medical examiner reports, autopsy reports, and laboratory test reports to family members of the deceased and persons who may be civilly or criminally liable for the death, notwithstanding that the records might otherwise be exempt from disclosure under Oregon Laws 1973, chapter 794, section 11.

After adoption of the Public Records Law in 1973, every subsequent legislative assembly amended *former* ORS 192.500(2)(h) to add to or correct the list of laws limiting or restricting disclosure of public records or creating confidential or privileged records. Statutes were added to the list that had been adopted before 1973. *See, e.g.*, Or Laws 1975, ch 308, § 1 (adding reference to ORS 346.146, which had been adopted in 1971, Or Laws 1971, ch 312, § 4); Or Laws 1977, ch 587, § 1 (incorporating reference to ORS 482.141, which had been enacted in 1971, Or Laws 1971, ch 195, § 3). In addition, *former* ORS 192.500(2)(h) was amended to add a statute adopted at the same legislative session. *See, e.g.*, Or Laws 1975, ch 582, § 1 (adding reference to ORS 722.414 to the list, a law adopted by Or Laws 1975, ch 582, § 113); Or Laws 1981, ch 892, § 92 (adding references to ORS 40.225 to 40.295 privileges enacted by Or Laws 1981, ch 892, § 32).

Between 1973 and 1987, the legislature added new or previously enacted statutes to the list referenced by *former* ORS 192.500(2)(h) six times. None of those laws references *former* ORS 146.035(6). It is beyond dispute that *former* ORS 146.035(6) was not law categorized by the public records exemption in *former* ORS 192.500(2)(h) as prohibiting or restricting the disclosure of a public record or creating a confidence or privilege. The legislature put *former* ORS 146.035(6) on the list neither initially nor put it among the statutes added to the list in the six subsequent legislative sessions. Thus, between 1973 and 1985, the records regulated under what is now ORS 146.035(5) were not exempted from disclosure under the predecessor statute to ORS 192.502(9).

■       By 1987, the list of statutes in ORS 192.500(2)(h) had grown from 39 to more than 60 references. As noted in *Oregonian Publishing*, "ORS 192.500(2)(h) (1985) listed more than 60 individual statutes and chapters in Oregon Revised Statutes, but it was difficult to maintain as a comprehensive list because the legislature amended, added, and repealed laws affecting the disclosure of public records during each legislative session." 329 Or at 399. As a result, the 1987 Legislative Assembly replaced ORS 192.500(2)(h) (1985) with *former* ORS 192.502(8), *renumbered as* ORS 192.502(9) (1997). Or Laws 1987, ch 764, § 1; Or Laws 1987, ch 898, § 26. ORS 192.502(9) exempts from disclosure under the Public Records Law "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law."

The change from an exemption listing statutes that restrict disclosure to a generic description of those statutes in 1987 by the adoption of ORS 192.502(9) did not expand the exemption. It merely substituted a general description of the exemption for the earlier, specific exemption that included the list of statutes. The case law has treated the earlier version of the exemption as equivalent to ORS 192.502(9). Thus, in *Oregonian Publishing*, the Supreme Court construed ORS 192.502(9) as including ORS 342.850, a statute on teacher personnel files that had earlier been listed in *former* ORS 192.500(2)(h). In *Klamath County School Dist. v. Teamey*, 207 Or App 250, 140 P3d 1152, *rev den*, 342 Or 46 (2006), the defendant argued for a narrow construction of ORS 192.502(9) not to include documents privileged as an attorney-client communication. We rejected that contention because *former* ORS 192.500(2)(h) had specifically listed the attorney-client privilege statute as one of the statutes that was included in the exemption. We noted:

> "ORS 192.502(9) provides an exemption from disclosure for '[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law. *See Oregonian Publishing v. Portland School Dist. No. 1J*, 329 Or 393, 399, 987 P2d 480 (1999) (ORS 192.502(9) is a 'catchall' exemption intended to encompass all exemptions specifically listed in *former* ORS 192.500(2)(h) (1985), *repealed by* Or Laws 1987, ch 764, § 1);

*see also former* ORS 192.500(2)(h) (specifying ORS 40.225, at which OEC 503—the attorney client privilege—is codified)."

207 Or App at 259-60 n 2.

Thus, the statutes that prohibit or restrict disclosure of public records or make a record confidential or privileged are those that were listed in *former* ORS 192.500(2)(h) and those that were adopted in 1987 or subsequently. Those statutes do not include ORS 146.035(5). The context of ORS 192.502(9)(a) confirms that ORS 146.035(5) is not within the scope of the exemption.

The trial court erred in concluding that ORS 146.035(5) exempted certain medical examiner autopsy reports from public disclosure. Any such exemption must be expressly stated in statute, and not implied. The exemption is not within the scope of ORS 192.502(9)(a). On remand, the trial court can determine whether the requested record is exempt from disclosure under other parts of the Public Records Law.

Reversed and remanded.

**WOLLHEIM, J.,** concurring.

When I die, and if there is an autopsy, the last thing I want is for a perfect stranger to review my autopsy report. Here a perfect stranger to decedent, plaintiff, requested a copy of the autopsy report from the medical examiner. That is wrong. Yet, for the reasons that follow, I concur with the result reached by the majority that this case must be reversed and remanded for further proceedings.

This case arises under Oregon's Public Records Law, ORS 192.410 to 192.505. Plaintiff requested a copy of the medical examiner's report, including a copy of the autopsy report and laboratory tests performed on the decedent. Plaintiff based his request on ORS 192.420(1), which provides that "every person has a right to inspect any public record of a public body in this state, except as otherwise provided by ORS 192.501 to 192.505." The medical examiner, the Attorney General, and the trial court all denied plaintiff's

request for a copy of the documents. Plaintiff appealed, arguing that the Public Records Law mandates disclosure of the autopsy report and laboratory tests performed on the decedent.

Reduced to the basics, this case is not complex. ORS 192.420(1) mandates disclosure of all public records unless the public record is exempt from disclosure. Disclosure is the rule. *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854 (1990); *Kluge v. Oregon State Bar*, 172 Or App 452, 455, 19 P3d 938 (2001). The trial court relied on ORS 192.502(9)(a) in refusing to order disclosure. ORS 192.502(9)(a) provides that public records are exempt from disclosure if that disclosure is "prohibited or restricted or otherwise made confidential or privileged under Oregon law." The trial court ruled that ORS 146.035(5) prohibits disclosure of the autopsy report and laboratory tests to plaintiff. ORS 146.035(5) provides, in part:

> "Any parent, spouse, child or personal representative of the deceased, or any person who may be criminally or civilly liable for the death, or their authorized representatives respectively, may examine and obtain copies of any medical examiner's report, autopsy report or laboratory test report ordered by a medical examiner * * *."

ORS 146.035(1) *authorizes* disclosure of an autopsy report to the class of persons identified in the statute. ORS 146.035(5) does not *prohibit* disclosure of an autopsy report. Thus, the trial court's reliance on ORS 146.035(5) as exempting, prohibiting, restricting, or otherwise making the autopsy report confidential or privileged under ORS 192.502(9) is wrong. To interpret ORS 146.035(5) as prohibiting disclosure is to insert words in that statute that the legislature did not include. ORS 174.010.

It may be that the 1973 legislature did not intend that autopsy reports be disclosed to perfect strangers of the deceased when the legislature adopted both the Public Records Law and revisions to the medical examiner statute. Or Laws 1973, ch 794; Or Laws 1973, ch 408. But Oregon

laws do not exempt autopsy reports from disclosure to members of the public, including perfect strangers to the decedent. If the legislature does not want autopsy reports disclosed to such strangers, then it is up to the legislature to amend ORS 146.035(5), or some other statute, to prohibit disclosure.

For these reasons, I respectfully concur with the result reached by the majority.

Edmonds, P. J., joins in this concurrence.